Booth, Judge,
reviewing the facts found to be established, delivered the opinion of the court.
The claimant company sues for reimbursement of expenses incurred in defending a certain suit against it, which, under the terms of an indemnifying contract with the defendants, it insists they are obligated to pay. The circumstances of the transaction are not in dispute. The claimant company, a manufacturer of firearms, entered into two contracts for the manufacture of a large number of Lee Straight Pull rifles. It was fully understood by both parties to the contract that its fulfillment necessarily involved the danger of a suit or suits for the infringement of a patent in the construction of the arms. The defendants, therefore, readily acceded to a stipulation in the contract by the express terms of which they agreed to hold the company harmless from such suit or suits. The claimant company had proceeded but a few months when the expected opposition developed, and a suit was commenced against it for an infringement of patent *121 rights claimed under letters patent issued to Capt. Andrew H. Russell, U. S. A.
The litigation was extended and tedious, covering a period of time from November 11, 1898, to November 21, 1906. Immediately upon notice of the commencement of the suit the claimant company consulted its attorney, and after some preliminary proceedings the defendants were notified of the same. Without the repetition of many details, fully set forth in the findings, it is manifestly certain that the attorney selected in the first instance by the claimant company carried forward the arduous task of defending this suit with signal ability and industry. The defendants, through the Department of Justice, upon receipt of notice as to the pending patent controversy, notified the United States district attorney within the jurisdiction to appear and represent them. The district attorney at the time was not an experienced patent lawyer, and upon receipt of said notice immediately conferred with the claimant’s attorney and personally requested him to remain in the case. Thereafter, upon repeated occasions, both by personal contact and correspondence, the defendants ratified, confirmed, and acquiesced in the conduct of the claimant company in the premises, accepting its attorney of record as a full discharge of its duty under the contracts. At all times, from the inception to the close of the litigation, the defendants approved of the defense made, joined with the claimant’s attorney, and recognized and treated the entire course of proceeding as one distinctly made on behalf of the defendants by the claimant company to forestall a judgment for damages and costs which under the contracts the defendants would have had to pay. It was in legal effect simply saying to the claimant company, we adopt, approve, and accept the steps you have taken in the defense of the patent case, instead of pursuing an independent course or employing an attorney of our own. The defendants never at any time employed or designated a patent attorney to appear for or assist the claimant company in the conduct of the case.
The evidence, voluminous in extent, requiring years in its taking, was all taken by the claimant’s attorney, the briefs *122 were prepared by him, all with the knowledge and consent of the defendants, and it would be difficult to conceive a more complete ratification of a duty done or services rendered under the relationship between the parties obtaining here than is apparent in this case. It was, in fact, as the record indisputably discloses, the rendering of a service by the claimant company which the defendants knew they were by the express terms of the indemnity clauses obligated to render and which they adopted and consented to under circumstances admitting liability therefor under the contracts. The defendants would have had to employ a patent lawyer and pay him for his services or suffer the penalty of judgment against the claimant for an infringement of a patent right. The menace was apparent, known and within the contemplation of the parties when the contracts were made. The defendants are presumed to know, and did know, the amount of expense involved in patent litigation in Federal courts, and when they employed the term harmless it had for its distinctive purpose and intention to save the full consideration of the contracts to and for the claimant company, the same as if they could have proceeded unembarrassed by any suit or suits.
In support of the above statement it is only necessary to emphasize the fact that after the filing of the demurrer to the bill the defendants were expressly notified that the claimant company’s interest in the litigation, in view of the indemnifying clauses of the contracts, was insignificant, and the defendants would thereafter be expected to make good their contract.
This suit is defended upon the theory that the liability of the defendants under the indemnifying clauses of the two contracts extends only to payment of the judgment for damages it was liable to incur and that such taxable costs as legally follow the determination of patent litigation, i. e., outside expenses, including attorney’s fees, are not recoverable.
It seems to the court that the situation indispensable to the maintenance of the defense in this particular instance is lacking. Without going into the contrariety of opinion apparent from the decisions of the State courts, where the issue *123 presented was between the obligor and obligee upon indemnifying bonds given in the course of judicial proceedings and necessary to invoke the machinery of the law, such as injunction, attachment bonds, etc., we think this case is clearly distinguishable therefrom.
The indemnity afforded in this case arises in virtue of a written contract, a distinct instrument between the parties, entirely disconnected from the litigation which followed in so far as any action of the court trying the case was concerned. The court in its judgment in favor of the claimant company was limited in its award to the taxation of such costs and expenses as legally appertain to the successful defense of a patent case. Entirely independent of the court’s action, oí the costs fixed by statute in such a case, the claimant company had a written contract with the defendants to save it harmless upon prompt notification of a pending suit or suits which might be brought against it. The total costs recovered by the company against the alleged patentee were paid by the latter, and the fact that this sum measured the full power of the court in the premises in no wise inhibits this court from applying the usual canons of construction to the contract involved in this case.
An indemnifying contract, like all other written agreements, is open to the ascertainment of the intention of the parties in executing the instrument and the scope and operation of the same. The circumstances of the transaction and the situation of the parties at the time the contract is made are all pertinent inquiries and alike effective in fixing responsibility under its express terms. (22 Cyc., 84.)
The claimant company prior to entering into the contracts in suit expressly forewarned the defendants that danger threatened it in executing the contracts on account of alleged patent rights. The defendants recognized the danger and with full knowledge of the situation agreed to save the company harmless from “ any and all suits,” not alone harmless from damages incurred, but the more comprehensive term, amy and all suits. That the defendants understood that the burden of defending all suits rested upon them is attested by the last clause—the stipulation imposing the obligation *124 of immediate notice of their commencement. The specifications likewise publicly notified intending bidders that the Government would hold the contractor harmless from all patent infringement, and thereby induced the offering of the contract articles at a price without this anticipated expense in mind. In view of the findings, it is difficult to see the transaction in any other light than an open, intentional, and express covenant upon the part of the defendants to assume all expense incident to an attack upon the successful bidder by any and all alleged patentees.
The parties to the agreement were not indulging in technical construction of comprehensive terms; no thought occured to either that the word harmless had any other meaning than its usually accepted one, and no contractor would have entered into the contract upon the basis of reasonable prices if he knew at the beginning he was to incur the indeterminate expense of long and vexatious patent litigation, an expense that in point of fact in this case was imminent and certain to follow.
The claimant company under its contract was entitled to the full consideration for the undertakings undiminished by the defense of defending suit or suits for the infringement of a patent. The company manufactured the rifles with this fact clearly in view, and the defendants intended the contracts should be so understood.
It is said that the court in patent litigation is powerless to allow attorney’s fees as part of the costs of the proceedings. This is undoubtedly correct. Oelrichs v. Spain, 82 U. S., 211. The Federal court trying the case of Eussell against the claimant company could not and of course did' not allow attorney’s fees and expenses as part of the taxable costs. It does not follow, however, that they were not in the contemplation of the parties to an express and independent agreement to hold harmless from any and all suits for an infringement of a patent right. The claimant company was not contracting upon the narrow and technical basis of the legal extent of liability attaching to an unsuccessful litigant in a patent case. The defendants agreed upon notice to save it harmless, not from judgments, damages, or costs, but from *125 suit or suits, the whole course of legal procedure from beginning to end. The defendants knew the claimant company in the event of suit or suits would be the indispensable party defendant to the patent case; they knew, or at least are presumed to have known, the limitations of recovery against the patentee in the event of failure to maintain his cause of action. Under what theory are we to indulge the presumption that the defendants having by their express contract placed the claimant company in this situation are then to be permitted to assert a limited liability under a clause to save harmless and thereby escape the payment of reasonable and proper expenses which they would have been compelled to pay had they instead of the claimant company been the named defendants to the patent case? The defendants wanted the rifles; they could not get them without running counter to alleged patent rights; they accepted the hazard, agreed to the conditions of the contracts of indemnity, do not deny the reasonableness of the charges here involved, and fully recognized the certainty of their existence.
Judgment will be awarded claimant company in the sum of $12,446.90.
It is so ordered.
Downey, Judge, was absent and took no part in the decision of this case.