Argued November 6, 1972, reversed February 1, 1973

# UNITED STATES FIRE INSURANCE CO., *Respondent, v.* CHRYSLER MOTORS CORP., *Appellant.*

505 P2d 1137

*E. Richard Bodyfelt,* Portland, argued the cause for appellant. With him on the briefs were Tooze, Kerr & Peterson.

*George M. Joseph,* Portland, argued the cause for respondent. On the brief were Bemis, Breathouwer & Joseph and Mize, Kriesien, Fewless, Cheney & Kelley.

McALLISTER, J.

Jeanette Berger and her husband purchased a Chrysler automobile from Westway Chrysler-Plymouth, Inc. The automobile had been sold to Westway by the defendant, Chrysler Motors Corp. Mrs. Berger filed an action for damages for personal injuries against Westway and Chrysler alleging that while driving the automobile she was involved in a head-on collision and that as a result of a defect in the automobile she suffered extensive personal injuries. She alleged that the automobile was defective because, upon impact, the front seat left its track and pinned her beneath the steering wheel and the dashboard. The complaint was in three counts, proceeding on theories of breach of warranty, strict liability for sale of a defective product, and negligence on the part of both Chrysler and Westway in the following particulars: "(1) In failing to design and construct the front seat of said automobile in its track of proper materials so that it would not become disengaged as so above alleged. (2) In failing to warn of the dangers inherent in the use of the automobile as herein alleged. (3) In failing to properly test the front seat and its track so that it would withstand the impact above alleged." She prayed for $2,235.20 in special damages and $50,000 general damages.

Westway and its liability insurer U. S. Fire Insurance Co. tendered the defense of the Berger action to Chrysler. The tender was declined and U. S. Fire undertook the defense on behalf of its insured. Mrs. Berger later filed a second amended complaint, omitting the warranty count and proceeding only on the theories of strict liability and negligence. U. S. Fire again tendered the defense of the action to

Chrysler and Chrysler again declined the tender. U. S. Fire then continued with the defense of the action.

Chrysler settled Mrs. Berger's action before trial, paying $1,250 and received a release of both Westway and Chrysler. The release recited that Westway and Chrysler both expressly denied liability for damages arising out of Mrs. Berger's accident.

In this action U. S. Fire as Westway's subrogee claims the right to be indemnified by Chrysler for $1,995.90 incurred in defense of the Berger action which the parties have stipulated was a reasonable amount for defending the action prior to settlement. In a trial without a jury the court overruled a demurrer to plaintiff's complaint, denied Chrysler's motion made at the close of plaintiff's case for a "peremptory finding in favor of defendant" and rendered judgment for plaintiff. Chrysler appealed.

■ The issue is whether Chrysler is obligated to reimburse U. S. Fire for its expenses in defending Westway in the damage action brought by Mrs. Berger merely because the allegations of Mrs. Berger's complaint were such that the proof might have shown that Chrysler was primarily liable and Westway secondarily liable for Mrs. Berger's injuries. It should be borne in mind that U. S. Fire stands in Westway's shoes and is entitled to recover only if Westway could have recovered from Chrysler.

■ Chrysler contends that U. S. Fire cannot recover because it neither pleaded nor proved the elements of an action for common-law indemnity as summarized in Restatement, Restitution, § 76:

> "A person who, in whole or in part, has discharged a duty which is owed by him but which as between himself and another should have been dis-

charged by the other, is entitled to indemnity from the other, unless the payor is barred by the wrongful nature of his conduct."

Our cases have consistently applied these principles, and have required the claimant in an indemnity action to show that he has discharged a legal obligation to a third party to whom the indemnitor was also obligated, and that as between the two the indemnitor ought to have discharged the obligation.[①] As applied to this case the rule means simply that U. S. Fire can recover only by pleading and proving that both Westway and Chrysler were liable to Mrs. Berger and that, as between Chrysler and Westway, Chrysler ought to pay.

It is axiomatic that if the facts necessary to create a common law right to indemnity were not established in Mrs. Berger's action they must be pleaded and proved in this action. *Fulton Ins. Co. v. White Motor Corp.*, 261 Or 206, 212, 493 P2d 138, 141 (1972). It is obvious that no common law right to indemnity was established in Mrs. Berger's case because it was settled without trial. It is equally obvious that U. S. Fire has failed to prove in this case the essential elements of an action for indemnity as against Chrysler and made no attempt to do so.

This brings us to U. S. Fire's only contention,

---

[①] Citizens Ins. Co. v. Signal Ins. Co., 261 Or 294, 298, 493 P2d 46 (1972); Owings v. Rose', 262 Or 247, 497 P2d 1183 (1972); Fulton Ins. Co. v. White Motor Corp., 261 Or 206, 210, 493 P2d.138 (1972); General Ins. Co. v. P. S. Lord, 258 Or 332, 335-336, 482 P2d 709 (1971); Astoria v. Astoria & Columbia River R. Co., 67 Or 538, 548-549, 136 P 645 (1913). In Kennedy v. Colt, 216 Or 647, 339 P2d 450 (1959) the opinion does not discuss the indemnitor's legal liability to the third party. It does, however, clearly require at least a showing that the indemnitor was primarily responsible for the injury. 216 Or at 653-654.

that because Mrs. Berger's complaint contained allegations which, if proved, could have established primary liability as to Chrysler and secondary liability as to Westway, Chrysler has a duty to defend the action. If this contention were accepted it would place on manufacturers the duty to defend virtually all products liability actions brought against their dealers, whether or not those actions were well-founded. It would also create a non-contractual duty to defend in a variety of other situations involving potential indemnity claims. In support of this theory and of the trial court's judgment plaintiff relies on *Ferguson v. Birmingham Fire Ins. Co.*, 254 Or 496, 460 P2d 342 (1969) and *St. Paul Fire & Marine Insurance Co. v. Crosetti Bros., Inc.*, 256 Or 576, 475 P2d 69 (1970). The short answer to plaintiff's contention is that neither of those cases was a common law indemnity case, but both involved express agreements which expressly imposed upon the indemnitor the duty to defend.

*Ferguson* was an action on a liability insurance policy, which provided that the insurer would defend

"* * * any suit against the insured alleging such bodily injury or property damage and seeking damages which are payable under the terms of this endorsement, even if any of the allegations of the suit are groundless, false or fraudulent; * * *." 254 Or at 499.

Under the terms of that agreement the court held that the insurer had a duty to defend an action against the insured even though the complaint alleged conduct which was not covered by the policy, if the complaint would, without amendment, also support recovery for conduct which was covered by the policy.

In *St. Paul Fire & Marine v. Crosetti Bros.*

this principle was applied to a defendant, Crosetti Bros., who was not an insurance company, but who had agreed to "indemnify and save harmless" the Port of Portland "from all fines, suits, claims, demands and actions of any kind and nature" arising out of Crosetti Bros.' operations. The court held that if the third party's complaint alleged facts which would allow recovery for conduct covered by the indemnity agreement, Crosetti Bros. had a duty to defend the action or pay the costs of defense. It also held that Crosetti Bros. was liable for the defense costs, even though the defense had been successful and the Port of Portland had not had to pay any damages.

■ In the present case U. S. Fire relies on the following overbroad statement made in *Crosetti*:

> "The rule in most jurisdictions, regardless of whether indemnity is based upon an implied or an express agreement, is that when a claim is made against an indemnitee for which he is entitled to indemnification, the indemnitor is liable for any reasonable expenses incurred by the indemnitee in defending against such claim, regardless of whether the indemnitee is ultimately held not liable. * * *" 256 Or at 579.

The above statement is not applicable in this case for two reasons. By its terms the statement applies only to claims against an indemnitee for which he is entitled to indemnification. It has never been established in this case that Westway is entitled to indemnity from Chrysler. In the *Crosetti* case St. Paul had shown that its insured, the Port of Portland, was entitled to indemnity under the terms of an agreement which required Crosetti to indemnify and save the Port of Portland harmless from all "claims, demands and actions." The complaint against the Port of Portland

contained allegations which, if true, would make Crosetti primarily liable to the injured party. Crosetti, therefore, owed Port of Portland a defense under the terms of their express contract. An agreement to "hold harmless" is generally held to include an obligation to defend, or to reimburse for the costs of defense, when an action within the terms of the agreement is filed against the indemnitee. *New York Central Railroad Co. v. General Motors Corp.,* 182 FS 273, 291 (ND Ohio 1960); *Winchester Repeating Arms Co. v. U.S.,* 51 Ct Cl 118 (1916).

Neither *Crosetti* nor the cases cited in support of the statement quoted above hold that the mere unproved allegations of a third party establish a right to a defense of those allegations in the absence of an agreement to defend all claims or to hold the indemnitee harmless.

*Miller and Company of Birmingham v. Louisville & N. R. Co.,* 328 F2d 73 (5th Cir 1964), cert denied 377 US 966, 84 S Ct 1648, 12 L Ed 2d 737, and *Commercial Standard v. Cleveland,* 86 Ariz 288, 345 P2d 210 (1959) both involved express "hold harmless" agreements. *Commercial Standard* recognized the duty of the indemnitor, under the terms of the agreement, to provide defense services or to pay the costs of a successful defense. The *Miller and Company* case recognizes the duty to reimburse for defense costs only in the event of a judgment against the indemnitee.

■ *Southern Arizona York Refrigeration Co. v. Bush Mfg. Co.,* 331 F2d 1 (9th Cir 1964) was a common-law indemnity case in which a judgment had been recovered against the indemnitee, who then sued to require the indemnitor to reimburse it for the amount paid to satisfy the judgment and for costs and attorney fees.

The court held only that if the plaintiff established its right to indemnity it was entitled to recover its costs, including attorney fees, incurred in defending the third party action. In *O'Connell v. Jackson,* 273 Minn 91, 140 NW2d 65 (1966) it is not clear whether the court regarded the action as one for common-law indemnity or as an action for damages under Restatement, Torts, § 914, which authorizes recovery for costs incurred in litigation made necessary by the tortious act or breach of duty of another. In any event, the case holds no more than that a plaintiff who has established his right to reimbursement for a judgment may also recover his defense costs. Neither *O'Connell v. Jackson* nor *Southern Arizona York Refrigeration Co. v. Bush Mfg. Co.* involved the right to recover defense costs when liability had not been established.

The dissent relies on *Paliaga v. Luckenbach Steamship Company,* 301 F2d 403 (2d Cir 1962), also cited in *Crosetti,* as holding that under parallel facts, including a settlement by the indemnitor, the indemnitee is entitled to recover its defense costs without a showing of liability to the injured third party. We do not read *Paliaga,* however, as dispensing with the need for a showing that the costs were incurred on account of some wrongful act on the part of the indemnitor. The case was decided on the basis of the stevedore's duty under maritime law to indemnify a shipowner for claims arising out of the stevedore's operations, a duty which the law implies as arising out of the contract for services even in the absence of an express indemnity agreement. The stevedore, who had been impleaded by the defendant shipowner, settled the action by an injured longshoreman while the jury was deliberating. The trial court denied the shipowner's motion to continue with the trial of the indemnity issues and

determine the shipowner's right to recover defense costs. On appeal the denial of this motion was held to be an abuse of discretion. The holding was not that the shipowner was entitled to recover defense costs, but that it was entitled to have that question determined in the same proceedings. The question whether the stevedore had breached his duty to the shipowner, and was therefore responsible for the shipowner's costs of litigation, was still to be determined in the trial court. The court on appeal said that the stevedore's obligation was to "indemnify the shipowner for any loss incurred by the shipowner caused by the stevedore's failure to use proper care." 301 F2d at 410.

The *Crosetti* case does not stand for the proposition that, absent an express agreement, plaintiff had a right to be indemnified for its defense costs upon the mere showing that the third party's complaint alleged facts under which Westway might have been entitled to indemnity, nor does *Paliaga* or any of the other cases cited in *Crosetti*. Plaintiff has cited no authority which does stand for that proposition, and we have found none.

The Uniform Commercial Code makes some provision for the rights of buyers against sellers under these circumstances, but does not establish any right to recover defense costs. ORS 72.6070 (5) provides:

"Where the buyer is sued for breach of a warranty or other obligation for which his seller is answerable over:

"(a) He may give his seller written notice of the litigation. If the notice states that the seller may come in and defend and that if the seller does not do so he will be bound in any action against him by his buyer by any determination of fact common to the two litigations, then unless the seller after

seasonable receipt of the notice does come in and defend he is so bound."

This section makes no change in the law requiring proof of the facts establishing a right of indemnity, and obviously contemplates no duty to defend in advance of such proof.

■ There are circumstances under which defense costs may be recovered from another party without resort to the special rules of indemnity. As summarized in McCormick on Damages 246:

> "* * * where the present defendant has by his wrongful conduct, be it tort or breach of contract, caused the present plaintiff to defend or prosecute previous legal proceedings, the law * * * allows the plaintiff to recover all the expense, including counsel fees, reasonably incurred by him in the prior litigation."

The author specifically recognizes that a seller's breach of warranty of quality may entitle the purchaser to recover costs of litigation. *Id.* at 250. The rule is adopted in the Restatement of Torts, § 914:

> "A person who through the tort of another has been required to act in the protection of his interests by bringing or defending an action against a third person is entitled to recover compensation for the reasonably necessary loss of time, attorney fees and other expenditures thereby suffered or incurred."

and also in the Restatement of Contracts, § 334:

> "If a breach of contract is the cause of litigation between the plaintiff and third parties that the defendant had reason to foresee when the contract was made, the plaintiff's reasonable expenditures in such litigation are included in estimating his damages."

See, also, 25 CJS 787-788, Damages § 50 e. This ground of recovery was recognized in *Huffstutter v. Lind,* 250 Or 295, 301, 442 P2d 227 (1968). In such a case, however, the plaintiff must allege and prove that his expenses were caused by defendant's wrongful conduct.

■ We have found no authority which would permit Westway to recover its defense costs without at least a showing that some act or breach of duty by Chrysler was the cause of the litigation and thus of the costs incurred in Westway's defense. In the present case, plaintiff has not proved either its right to common-law indemnity or that its involvement in the Berger litigation was caused by any breach of duty by defendant. Plaintiff has not proved that the car was, in fact, defective as Mrs. Berger alleged, or that if there was a defect it was one for which defendant was responsible. Plaintiff's evidence is insufficient to support recovery on any theory, and the judgment of the trial court must be reversed.

It is so ordered.

O'CONNELL, C. J., dissenting.

The majority opinion sees the liability to pay the cost of defense as resting entirely upon the proven liability of Chrysler for a loss resulting exclusively from its conduct.

I look upon the problem differently. I think that the liability to indemnity for expenditures made in defending an action is distinct from the liability to indemnity for a loss suffered as a result of a judgment against the alleged indemnitee based upon the alleged indemnitor's conduct. Where the question of the liability to indemnity arises out of a transaction involving the sale of goods, as in the present case, I

would explain my position as follows. If the action brought by the consumer against the dealer alleges not only a defect in the manufacture of the goods but also a loss resulting from misconduct of the dealer for which the dealer would not be entitled to indemnity, the dealer is threatened with imposition of a loss which could be his alone, without right of reimbursement from the manufacturer. Under these circumstances he should be made to bear his own cost of defense.

On the other hand, if the action against the dealer alleges as the cause of the loss only a defect in the manufacture of the goods, the allegations if proven will visit the loss on the manufacturer and, as between him and the dealer, that loss will be the manufacturer's exclusively unless he can prove that dealer is barred from indemnity by his own misconduct.

An action so brought can be looked upon not as the dealer's lawsuit but primarily as the manufacturer's lawsuit for the reasons already stated. There is, of course, always the possibility, looming in the future at the time the dealer is sued, that the manufacturer will assert a defense to the dealer's claim to indemnity, but unless statistics would show that the successful assertion of such a defense is common I would still insist that the lawsuit is the manufacturer's primary concern and he should defend it or pay the cost of doing so.[1]

The right of indemnity is based upon the equitable principle that one who makes a non-voluntary

---

[1] The same reasoning would apply where the action brought against the dealer alleges not only a manufacturer's defect, but also the dealer's failure to inspect. Since the dealer has a right to indemnity against the manufacturer even where the loss to the consumer is deemed to have been suffered as a result of the dealer's failure to inspect, the action brought against the dealer can be regarded as primarily the manufacturer's lawsuit.

expenditure for the benefit of another should be entitled to reimbursement for it. I believe that this principle is applicable in the situation which I have described. In the case before us it is shown that the complaint in the action brought against Westway alleged facts which would have entitled Westway to indemnity against Chrysler had there been a judgment in favor of Jeanette Berger and her husband, assuming of course that Chrysler did not have a defense against Westway's claim to indemnity. Under these circumstances I would hold that Chrysler did not have a defense against Westway's claim to indemnity. Under these circumstances I would hold that Chrysler must pay the cost of defense.

I join in the dissenting opinion filed by Mr. Justice DENECKE.

DENECKE, J., dissenting.

The majority opinion holds that in an action to recover the costs of defense as indemnity, Westway must prove that both Westway and Chrysler were liable to Mrs. Berger, and as between themselves, Chrysler ought to pay.

In my opinion that is incorrect in the context of this case. The action is for the costs of defense. Westway did not pay anything to Mrs. Berger. Mrs. Berger's complaint alleged a cause of action against both Chrysler and Westway which if proved would have entitled Westway to indemnity from Chrysler. In this indemnity action Chrysler has made no allegations or offered any proof that Westway was independently liable to Mrs. Berger. In that state of the record I am of the opinion that the plaintiff is entitled to indemnity.

Mrs. Berger alleged that Westway and Chrysler were strictly liable and negligent:

"(1) In failing to design and construct the front seat of said automobile in its track of proper materials so that it would not become disengaged as so above alleged. (2) In failing to warn of the dangers inherent in the use of the automobile as herein alleged. (3) In failing to properly test the front seat and its track so that it would withstand the impact above alleged."

I believe Westway has a right to indemnity from Chrysler even though Westway failed to test the seat and to warn Mrs. Berger of the danger. If Chrysler had alleged and proved facts which would have made Westway independently liable or jointly liable, Westway probably could not recover. For example, if Chrysler had proved that it warned Westway of the defect and relied upon Westway to remedy the defect but Westway failed to do so. Chrysler has not done this in the present case.

Section 93 (1) of the Restatement of Restitution provides:

"* * * The usual application of the rule, however, is with reference to persons who are under a duty of care to third persons and who are made liable because of a failure to use care in the inspection of the chattels. Thus, the seller of a dangerous chattel is normally under a duty of care to make some inspection before selling the chattel (see Restatement of Torts, §§ 400-402). A master is under a duty of care to his servants to inspect tools which he purchases from third persons (see Restatement of Agency, § 502). In such cases the fact that the claimant was negligent with respect to the person harmed does not prevent him from obtaining indemnity from the supplier, if his negligence consisted merely in failing to make an inspection and

his failure was because of his belief due to representations by the supplier that the chattels were not defective. \* \* \*." Restatement 409, Restitution § 93 (1).

*Comment a.* of this section provides:

"The rule stated in this Subsection applies where a person has sold or rented to the claimant, machinery, utensils or other chattels which have injured a third person during their use by the claimant, by the injured person or by some other person to whom the claimant sold, rented or lent them. The rule applies only where both the supplier and the other are liable in tort to the injured person." Restatement, Restitution, supra, at 408.

Illustration 3 to this section states:

"A contracts to purchase from B 1000 gallons of kerosene for resale. B carelessly supplies gasolene to A in containers marked kerosene. A careful inspection would have revealed that gasolene was supplied. A sells some of the gasolene to C as kerosene and as a result, C is seriously harmed. C recovers judgment against A who pays the judgment. A is entitled to indemnity from B unless A was reckless, in failing to inspect."

Examples of the application of this section are *Quality Market v. Champ. Valley Fruit,* 127 Vt 562, 255 A2d 183 (1969), and *De La Forest v. Yandle,* 171 Cal App2d 59, 340 P2d 52 (1959). In the former a retailer purchased bananas from a wholesaler and in turn sold them to a customer. The wholesaler had left a glass thermometer in the bananas and the customer injured herself on the thermometer. The customer sued the retailer and wholesaler; the retailer tendered the defense to the wholesaler which the wholesaler refused. The customer's action was settled before trial by a contribution from both the retailer and

wholesaler. The retailer brought this action for indemnity for the amount it paid in settlement and its defense costs. The court awarded indemnity for both items. The wholesaler urged that the retailer could not obtain indemnity because the retailer was independently liable. The court answered:

"In this light the most that can be said for the plaintiff's [retailer] misconduct is a failure to discover, in its retail operation, the presence of the thermometer which the defendant Camplain Valley [wholesaler] had inserted in the banana. This shortage, of itself, will not defeat the plaintiff's right to indemnity against the seller [wholesaler] who put the harmful cause in motion. * * *.

"* * * * *

"* * * Since it appears that the plaintiffs' fault in its duty to the injured person was secondary to the initial negligence of the defendant, its right to restitution is established. Restatement, Restitution, §§ 76, 93(1)." 127 Vt at 564-566.

In *De La Forest v. Yandle,* supra (171 Cal App2d 59), Mast had a trailer that needed repairs. He took it to De La Forest for such purpose. De La Forest sublet the work to repairmen. The repairmen made the repairs and returned it to De La Forest who in turn delivered it to Mast. Mast used the trailer and as a result of defective repairs a person was killed by the trailer. The decedent's widow sued Mast and De La Forest who demanded that the repairmen defend them. They refused and Mast and De La Forest settled and brought this action against the repairmen for indemnity.

· The complaint by the decedent's widow against Mast and De La Forest alleged they were negligent " 'in the driving, operating, ownership, sale, manufac-

ture, repair, inspection, control and maintenance of said trailer.' " The court stated:

> "* * * De La Forest was charged with the duty of inspecting their work before installing the axle on the Mast trailer and Mast was charged with the duty of inspecting the axle before reinstallation and use. Nevertheless, according to the allegations of the complaint, appellants reasonably relied upon the care of respondents [repairmen] and such reliance was justified. Under the circumstances appellants are entitled to indemnity." 171 Cal App2d at 61.

To the same effect see *London Guar. & Acc. Co. v. Scale Co.*, 322 Mo 502, 512-513, 15 SW2d 766 (1929). The majority holds that in this transaction in which Mrs. Berger's action never went to judgment, Westway cannot recover its costs of defense until and unless it proves in this indemnity action that both it and Chrysler were in reality liable to Mrs. Berger and Chrysler was "primarily liable."

Logically, it seems to me to follow that the majority would also have to hold that if Westway successfully defended against Mrs. Berger's action it also could not recover its defense costs unless it proved in an indemnity action against Chrysler that Westway and Chrysler were liable to Mrs. Berger. It would also seem to me that after successfully defending against Mrs. Berger's claim Westway would be collaterally estopped from taking a contrary position and contending that it and Chrysler were liable.

If Westway were not collaterally estopped or if Westway, or Chrysler, as in this case, settled Mrs. Berger's claim, it usually will not be practical for Westway to prove it and Chrysler liable. Westway's costs of defense which ended before trial because of

Chrysler's settlement was $1,995.90. Westway's cost to go through trial to prove itself and Chrysler liable would have to substantially exceed this amount. The accepted law is that the indemnitee cannot recover its costs in establishing its claims against its indemnitor. *Pacific Tel. & Tel. Co. v. Chick,* 202 Cal App2d 708, 719, 21 Cal Rptr 326 (1962); *Continental Casualty Company v. Reddick,* 196 S2d 239, 241 (Fla App 1967).[1] For this reason it would cost more for Westway or any other would-be indemnitee to attempt to secure indemnity than the amount sought to be recovered. The result is that as a practical matter Westway or one in its position will not secure indemnity.

In support of its decision the majority cites § 76 of the Restatement of Restitution and in footnote 1, decisions of this court. The distinction between the authorities cited by the majority and this case is that in the cases cited the party seeking indemnity paid something to a third party claiming liability and the party seeking indemnity is seeking reimbursement for that sum paid. In the present case neither Westway nor United States Fire Ins. Co. paid Mrs. Berger anything.

This distinction is significant. If Westway made a payment to Mrs. Berger for which it had no liability, it would be a rank volunteer and there would be no justification for its being reimbursed by anyone. If Chrysler were not liable to Mrs. Berger, Westway would be conferring no benefit on Chrysler by paying

---

[1] These are contract indemnity cases; however, if costs are not payable in contract indemnity a fortiori they are not payable in actions to secure implied indemnity.

Mrs. Berger; so there is no basis for Westway being reimbursed by Chrysler.②

The expenditure by United States Fire Ins. Co. for defense is in a different category. Chrysler would not defend Westway. If Westway did not defend, its liability to Mrs. Berger would be established by default and Westway and United States Fire Ins. Co. could recover whatever they had to pay Mrs. Berger from Chrysler unless Chrysler pleaded and proved Westway was independently and "primarily" liable to Mrs. Berger. United States Fire Ins. Co.'s expenditure for defense inured to Chrysler's benefit because Chrysler had no obligation to Mrs. Berger if United States Fire Ins. Co.'s defense was successful.

There are several reasons why Westway's insurer, United States Fire Ins. Co., should be granted indemnity for its defense costs.

A refusal to allow indemnity until and unless Westway proves that it and Chrysler were really liable to Mrs. Berger would substantially shrink the extent of indemnity. Westway is sued. It tenders the defense to Chrysler. Chrysler has a duty to accept the defense because any liability of Westway must be reimbursed by Chrysler. That Chrysler has a duty to defend is evidenced by the fact that if it fails to defend, and Mrs. Berger secures a judgment against Westway, and in the indemnity action Chrysler does not prove Westway was independently liable to Mrs. Berger, Chrysler must pay the amount of the judgment as well as Westway's defense costs.

"* * * The original seller's liability in rela-

---

② I am omitting any reference to the situation in which indemnitee proves that the settlement was reasonable and in good faith. In the present case the indemnitor, Chrysler, not the indemnitee, made the settlement.

tion thereto extends to damages sustained by his purchaser because of injuries to third persons to whom the property was resold proximately caused by breach of the warranties. * * *.

"In such situations, the liability of the original seller is concluded by a judgment obtained against his purchaser in an action against the latter for breach of the warranties, provided the seller was duly notified of the commencement of the prior action and was tendered the defense thereof. * * *. The seller's liability under such circumstances extends to the amount of the judgment obtained against his purchaser and also the necessary expenses, including costs and attorney's fees, incurred by the purchaser in defense of the action. * * *." *Liberty Mutual Insurance Co. v. J. R. Clark Co.,* 239 Minn 511, 518, 59 NW2d 899 (1953).

If Westway is successful in defending or Chrysler changes its mind and settles for Westway after Westway has incurred some defense costs, it would seem Westway ought to be made as whole as it would if Mrs. Berger prevailed. Chrysler ought to be required to pay defense costs to a party who successfully defends for Chrysler as well as to one who unsuccessfully defends for Chrysler.

Robert Leflar wrote:

"* * * Other types of the right to indemnity are commonly called quasi contractual, or arising out of a 'contract implied by law.' Indemnity between persons liable for a tort falls within this type of case. As between such persons, the obligation to indemnify is not a consensual one; it is based altogether upon the law's notion—influenced by an equitable background—of what is fair and proper between the parties. * * *. The quasi contractual idea of unjust enrichment of course underlies any holding that one who has been compelled in discharging his own legal obligation to pay off a

claim which in fairness and good conscience should be paid by another can secure reimbursement from that other. * * *." Leflar, *Contribution and Indemnity Between Tortfeasors*, 81 Pa L Rev 130, 146-147 (1932).

About 40 years later William Prosser wrote in a similar vein:

"* * * Indemnity is a shifting of responsibility from the shoulders of one person to another; and the duty to indemnify will be recognized in cases where community opinion would consider that in justice the responsibility should rest upon one rather than the other. * * *." Prosser, Law of Torts (4th ed) 313, § 52.

At least to me it seems eminently "fair and proper" and in line with what I would consider to be the community opinion of "justice" that Chrysler should pay Westway's costs of defense. Westway was "fighting Chrysler's battle." In the event Mrs. Berger won, Chrysler would have to reimburse Westway in full, including costs of its unsuccessful defense. Why is it not completely "fair and proper" for Chrysler to pay for Westway's successful defense? If Westway is successful and prevents any liability from being imposed upon Chrysler, why is it not "fair and proper" to require Chrysler to pay for this service? Westway's defense was for the benefit of Chrysler. The majority holds that if Westway is successful for the benefit of Chrysler, Westway must bear the expense. If Westway is unsuccessful to the detriment of Chrysler, Chrysler must reimburse Westway for its expense.

None of the authorities cited by the majority hold or advocate the position the majority espouses. All the authorities the majority cites concern payments to the injured party, not payment of the costs

of defending against a claim, which if successfully prosecuted would be the obligation of the indemnitor.

I was of the opinion, as was the trial court, that this court had already decided that one in the position of Westway was entitled to indemnity. In *St. Paul Fire & Marine v. Crosetti Bros.,* 256 Or 576, 475 P2d 69 (1970), the defendant and indemnitor, Crosetti Bros., rejected the tender of defense by the indemnitee; however, Crosetti later settled the action against it and the indemnitee. The indemnitee brought an action for the indemnitee's defense costs. We held the indemnitee could recover. The facts are identical to those in this case except in *Crosetti* there was an express indemnity agreement. Our opinion, however, was not based upon this distinction.

The majority attempts to distinguish *Crosetti.* I do not believe the distinctions made are valid. The complete context of the paragraph quoted by the majority is as follows:

"The defendant also contends: '[T]he terms of the indemnity clause do not require a payment for defense costs where the indemnitee has not incurred some obligation for "damages," either by way of a settlement or a judgment.' Defendant cites in support thereof *Hunter v. Missouri-Kansas-Texas Railroad Company,* 276 F Supp 936, 944 (ND Okla 1967). The language of the indemnity contract in that case was similar to that in the present case and the decision does support the defendant's position.

"In *St. Paul Fire v. U. S. Nat. Bank,* 251 Or 377, 446 P2d 103 (1968), we recently awarded defense costs to an indemnitee although the indemnitee obtained a judgment in his favor and, therefore, did not incur any obligation to pay damages. No issue, however, was raised in that case on this particular point.

"The rule in most jurisdictions, regardless of whether indemnity is based upon an implied or an express agreement, is that when a claim is made against an indemnitee for which he is entitled to indemnification, the indemnitor is liable for any reasonable expenses incurred by the indemnitee in defending against such claim, regardless of whether the indemnitee is ultimately held not liable. * * *." 256 Or at 579.

The basis of our holding was that an indemnitee is entitled to reimbursement for its defense costs regardless of whether it is ever proved that the indemnitee is liable to a third party and this rule should apply whether the indemnity be contractual or implied.

Section 80 of the Restatement of Restitution is entitled "Amount of Recovery" in indemnity. *Comment b.* states:

"* * * If suit is brought against a person liable as surety upon an obligation he can notify the principal obligor and give him an opportunity to defend the suit; upon failure of the principal obligor so to do the secondary obligor is entitled to all expenses of suit, whether successful or unsuccessful, if the conduct of the suit is reasonable. * * *." Restatement 357, Restitution § 80. (In this section the Restatement appears to use "surety" as synonymous with "payor," its synonym for "indemnitee."

Section 107 of the Restatement of Judgments provides, in part:

"In an action for indemnity between two persons who stand in such relation to each other that one of them has a duty of indemnifying the other upon a claim by a third person, if the third person has obtained a valid judgment on this claim in a separate action against

"(a) the indemnitee, both are bound as to the

existence and extent of the liability of the indemnitee, if the indemnitee gave to the indemnitor reasonable notice of the action and requested him to defend it or to participate in the defense; * * *." Restatement 511, Judgments § 107.

*Comment i.* to this section states:

"Where a right of indemnity exists, the relation between the parties ordinarily entitles the indemnitee to recover not merely the amount of the judgment against him but also the amount of the expenses for attorney's fees. This is true even if the judgment is in his favor. Thus where an agent becomes a party to a contract at the request of the principal and is sued for breach of contract by the other contracting party, if the breach is without his fault he is entitled to indemnity from the principal for the expense of maintaining a successful defense (see the Restatement of Agency § 439). This result does not depend upon any principle of res judicata." Restatement, Judgments, supra, at 518.

The phrase, "Where a right of indemnity exists," must be read, "Where the right of indemnity would exist if the third party suing the indemnitee had prevailed." This must be the meaning otherwise the phrase would be inconsistent with the statement, "This is true even if the judgment is in his [indemnitee] favor." If the judgment is in the indemnitee's favor there can be no right to indemnity except for the cost of the successful defense.

The majority construes *Paliaga v. Luckenbach Steamship Company*, 301 F2d 403 (2d Cir 1962), differently than I do. A longshoreman sued a ship for injuries. The ship impleaded the stevedore contending that if it were liable to the longshoreman it was entitled to indemnity from the stevedore because the ultimate fault was that of the stevedore. There was no

contract of indemnity. The stevedore settled the long-shoreman's claim and the longshoreman's claim against the ship was dismissed. There was no decision that either the ship or the stevedore had any liability to the third party, the longshoreman. These facts are exactly parallel to those in our case. The court held the ship was entitled to recover its costs of defense from the stevedore.

I believe that the majority opinion is incorrect for the further reason that it would discourage settlements, whereas, the law normally seeks to encourage settlement. Westway has nothing to gain by settling. Westway's best posture is to put up a "half-hearted" defense and hope it loses. Chrysler can thwart Westway by settling at any time before judgment. If Westway will not agree to a dismissal against itself and goes on to win, according to the majority, Westway must go on to prove that Chrysler and itself were liable to Mrs. Berger before it can recover defense costs.

Based upon the fundamental purposes of the law of indemnity, what I believe to be unsatisfactory practical consequences of the majority decision, and the past decisions of this court and the other authorities, I am of the opinion the majority decision is incorrect.

TONGUE, J., also dissents.