682 P.2d 630

**J.R. FARBER and Amelia V. Farber, husband and wife, Plaintiffs,**

**v.**

**The STATE of Idaho, The City of Nampa, Asphalt Paving and Construction Co., Inc., a corporation, Defendants.**

**ASPHALT PAVING AND CONSTRUCTION CO., INC., a corporation, Cross-Plaintiff,**

**v.**

**The STATE of Idaho, Cross-Defendant.**

**The CITY OF NAMPA, Cross-Claimant,**

**v.**

**The STATE of Idaho, Cross-Defendant.**

**The STATE of Idaho, Cross-Complainant-Respondent,**

**v.**

**ASPHALT PAVING AND CONSTRUCTION CO., INC., a corporation, Cross Defendant-Appellant.**

**No. 14845.**

Supreme Court of Idaho.

June 8, 1984.

David Emerson Comstock and Robert M. Tyler, Jr., Boise, for appellant.

Warren E. Jones and Mary S. Hobson, Boise, for respondent.

SHEPARD, Justice.

This is an appeal by Asphalt Paving and Construction Co., Inc., from a judgment

against it awarding attorneys' fees to the State of Idaho pursuant to the terms of an indemnification agreement. We affirm.

The State contracted with Asphalt for street improvements in Nampa close to a building owned by the Farbers. That contract incorporated the State Standard Specifications for Highway Construction, which provide in § 107.10:

"107.10. RESPONSIBILITY FOR DAMAGE. The contractor shall indemnify and save harmless the department, its officers and employees from all suits, actions, or claims of any character brought because of any injuries or damages received or sustained by any person, persons, or property on account of the operations of the contractor or his subcontractors, or on account of or in consequence of any neglect in safeguarding the work; ... or because of any act or omission, neglect or misconduct of the contractor or his subcontractors, ... or from any claims or amounts arising or recovered under the workmen's compensation act or any other law, ordinance, order or decree."

The Farbers claimed damage to their property and brought suit against the State and Asphalt on theories of negligence and condemnation. As to the negligence claim, the Farbers alleged that the use of heavy vibratory equipment used to compact the roadbed caused damage to their building. Both Asphalt and the State cross-claimed against each other. Asphalt settled with the Farbers, and trial took place with the State defending on the issues of condemnation and negligence. The jury returned a special verdict finding both the State and Asphalt to be free from any tort liability. The jury also found against the Farbers on the issue of condemnation. Since Asphalt had previously settled with the Farbers, it appeared at trial only in response to the State's claim against Asphalt for indemnification.

Following trial, the State moved for an award of attorneys' fees against Asphalt, and the court awarded judgment therefor in the sum of $13,882.89, which sum did not include fees relating to the State defense of Farbers' condemnation claim.

Asphalt asserts that it should not be required to indemnify the State, arguing that, since both the State and Asphalt were found not negligent, the indemnification provision is inoperative. We do not agree.

In the instant case, Asphalt agreed to indemnify the State and save it harmless in the event that any suit, action, or claim of any character is *"brought ... on account of the operations of the contractor ...."* (Emphasis added.) We hold that the word "brought" signifies that the duty to indemnity is triggered when the claim is made and not when and if it is successfully concluded. As stated by the trial court:

"The fact that the law suit is brought because of an injury or damage received or sustained does not mean there is liability, and to give the construction to the contract requested by Asphalt would put the indemnitee in a position where he would have to defend every law suit even though the indemnitor might be in a more knowledgeable position to defend, and then find the same to be counterproductive if he (the indemnitee) wins since the indemnitee's recovery of costs and expenses would be limited only to those cases where there is a Judgment against him. This is a strained construction and, in my opinion, not realistic in light of the facts of this case."

The Oregon Court, under somewhat similar facts, held in *St. Paul Fire and Marine Insurance Co. v. Crosetti Bros., Inc.*, 256 Or. 576, 475 P.2d 69, 71 (1970):

"The rule in most jurisdictions, regardless of whether indemnity is based upon an implied or an express agreement, is that when a claim is made against an indemnitee for which he is entitled to indemnification, the indemnitor is liable for any reasonable expenses incurred by the indemnitee ... regardless of whether the indemnitee is ultimately held not liable. [Citations]" *See also Richmond F. & P.R. Co. v. Hughes-Keegan, Inc.*, 207 Va. 765, 152 S.E.2d 28 (1967).

In the instant case, the Farbers' claim in negligence was predicated upon actions of

Asphalt rather than actions of the State. Thus, *State v. Interstate Amiesite Corp.*, 297 A.2d 41 (Del.1972); *Indiana State Highway Commission v. Thomas*, 169 Ind. App. 13, 346 N.E.2d 252 (1976); *State Highway Commission v. L.A. Reynolds Co.*, 272 N.C. 618, 159 S.E.2d 198 (1968); *Andrus v. State*, 541 P.2d 1117 (Utah 1975), are inapplicable since those cases each involved an attempt by a state to be indemnified for its own negligence.

Asphalt further argues that *Williams v. Johnston*, 92 Idaho 292, 442 P.2d 178 (1978), and *Weston v. Globe Slicing Machine Co.*, 621 F.2d 344 (9th Cir.1980), stand for the proposition that, in the instant case, there is no liability for indemnification absent the establishment of liability of the State to the Farbers. We disagree. In both *Williams* and *Globe Slicing*, the opinions of the court made clear that those holdings were based on the absence of a formal indemnity agreement. We distinguish both cases on that basis, just as those cases refused to follow precedents based on formal indemnity agreements.

In *International Harvester Co. v. TRW, Inc.*, Idaho (December 15, 1983), it was held that "[o]nce a party's right to indemnification is established and if the indemnitor has been given proper notice and opportunity to defend the underlying litigation, the indemnitee is entitled to recover from the indemnitor its costs and attorneys' fees in defending the main action." Here, Asphalt contractually agreed to "indemnify and save harmless" the State. In *St. Paul Fire and Marine Insurance Co. v. Crosetti Bros, Inc., supra*, that language was held to require the indemnitor to make a choice between defending or paying the defense costs, and since the indemnitor did not defend the suit, it had a duty to pay the attorneys' fees and investigative expenses of the indemnitee.

The judgment of the trial court is affirmed. Costs to respondent. No attorneys' fees on appeal.

DONALDSON, C.J., and BAKES, J., concur.

HUNTLEY, Justice, dissenting.

It is my view that the decision reached by the trial court and the majority of this Court flows from a misreading of the state standard specification paragraph section 107.10, which, in skeleton form provides:

107.10  RESPONSIBILITY FOR DAMAGE. The contractor shall indemnify ... [the state] ... from all suits ... brought because of any injuries or damages received by any person, persons, or property on account of the operations of the contractor ..."

The jury returned a special verdict finding Asphalt free from any tort liability in the manner in which it performed its work. Thus, the damage to the building was not caused by *operations of the contractor* but rather was caused by virtue of the fact that the State of Idaho decided to rebuild the street, during which rebuilding the State did require that the compacting process through use of heavy vibratory equipment be accomplished. The jury having found that the contractor did nothing improperly, the "operation" was that of the State in rebuilding the street.

More importantly, the plain wording of Specification 107.10 is that there shall be indemnification because of injuries or damages received by any third person or property on account of the operations of the contractor—the jury having found there were no injuries or damages to any third party or property, the contractor has no liability under the specification. The trial court, and the majority herein, fail to appreciate the distinction between the duty to indemnify and the duty to defend and in effect have made Asphalt the State's insurer against spurious lawsuits.

Accordingly, I would reverse and remand for entry of judgment in favor of Asphalt Paving and Construction Company, Inc.

BISTLINE, Justice, concurring in the judgment to affirm, but not in the opinion of the Court.

The holding of the Court's opinion is "that the word 'brought' signifies that the

duty to indemnify is triggered when the claim is made and not when it is successfully concluded." I do not comprehend the rationale by which this conclusion is reached, but see it as a mere *ipse dixit*, unsupported by any authority. Having uttered such pronunciado, the Court's opinion terminates with a quotation from International Harvester Co. v. TRW Co., No. 14282 in this Court[1] to the effect that once the right to indemnification is established, the indemnitee is entitled to expenses and attorney's fees sustained in providing the defense which the indemnitor decline to provide, the latter having been notified of the claim and offered the opportunity to take over the defense. This is a sound proposition, but the sole issue presented here was whether the contract of indemnity did in fact so obligate the indemnitor. Contrary to my reading of the Court's "holding," *supra*, the bringing of a claim does not trigger the obligation of the indemnitor unless the contract of indemnity so provides. What is at stake here is the construction of the written agreement.

The issue here addressed in the appellant's brief, and avoided in the Court's opinion, is whether the contractual provision in question created a duty to defend. Appellant's Brief, p. 15. It must be conceded that the agreement does not contain any language speaking in terms of a duty to defend. Properly read it does state that the contractor *shall indemnify* the State of Idaho for *damages sustained.* In an inartfully drawn agreement those underscored words are there, and do constitute an agreement to indemnify. As the case turned out, however, no damages were awarded the Farbers, and no judgment was entered against the State—hence leaving nothing to indemnify in that regard. As urged by appellant, "If the State had wanted to require contractors *to defend* the

State from all claims based in part on allegations of the contractor's negligence, *regardless of the outcome of those claims*, the State could have easily made this an express term of its contract." Appellant's Brief, p. 15. This is strong argument. The State could have done so, and had it done so, this litigation could have been avoided. Most liability policies are found to include language which not only promises to indemnify the insured as to any judgment taken against the insured, but also to "provide the defense." Much of the appellant's argument is devoted to the proposition that, absent its having undertaken by the written agreement the duty to defend, and absent there being any judgment to indemnify, it cannot be held liable for the State's expenses in defending against the Farmers' claim.[2]

It becomes in order, then, to ascertain, as the Court's opinion does not, the rationale by which the district court concluded that the State could recover:

"An agreement to 'hold harmless' is generally held to include an obligation to defend, or to reimburse for costs of defense, when an action within the terms of the agreement is filed against the indemnitee. *United States Fire Insurance Co. v. Chrysler Motors Corp.,* (1973) [264 Or. 362] 505 P.2d 1137. The State is not held harmless if it must incur costs and attorneys' fees in defending itself in this action.

"The intent of the parties in making an agreement is of paramount importance, and such agreement must be interpreted in accordance with the plain, ordinary and popular sense of the language used in the agreement and by giving consideration on a practical, reasonable and fair basis to the instrument in its entirely. To state that the contract is for judg-

---

**1.** A petition for rehearing was granted in this case. It had been my impression over the last eight years that an opinion of this Court did not rely upon a prior decision which was not wholly a final judgment, i.e., that the remittitur had issued.

**2.** "While the basic concepts are not identical and each has varied legal usages, indemnity and

insurance have common elements. Fundamentally each involves contractual security against anticipated loss, and in each case there must be a risk of loss to which one party may be subjected by contingent or future events, ...."

42 C.J.S. 566, Indemnity, § 3.

ment indemnity only would be to read into the contract a limitation which is not present nor intended. The indemnity clause specifies 'all suits, actions or claims of character ...'

"The fact that the law suit is brought because of an injury or damage received or sustained does not mean there is liability, and to give the construction to the contract requested by Asphalt would put the indemnitee in a position where he would have to defend every law suit even though the indemnitor might be in a more knowledgable position to defend, and then find the same to be counterproductive if he (the indemnitee) wins since the indemnitee's recovery of costs and expenses would be limited only to those cases where there is a Judgment against him. This is a strained construction and, in my opinion, not realistic in light of the facts of this case.

"The contract before the Court does not require that anyone be held liable or found to be guilty of some wrongdoing before the contractor is obligated to hold the State of Idaho harmless. Rather, the express terms for the contract obligate the contractor to save harmless the State from all suits, actions, or claims of any character. There is no stipulation that these claims be well founded, or that they result in a finding that any party is legally liable to the claimant. The contractor must simply hold the State harmless where a claim is made. Unless the contractor either undertakes the defense of the State in this context or reimburses it for its costs of defense, it has not complied with this obligation."

Memorandum Decision of Judge Lodge, R., pp. 21–23.

I find myself in accord with the views of the district court, which in my opinion should have been adopted by this Court. Where today's opinion for the Court holds that the duty to indemnify is triggered when the claim is made, *a fortiori*, there first must be found to exist a duty to indemnify. The district court, Judge Lodge, found that duty in the "save harm-

less" language of the written agreement. Apparently my experience over the years has paralleled his. While it might be said that one does not indemnify from suits, actions, or claims, there is little problem in saying that one may very well agree to save harmless from suits, actions, or claims. As is a well-known fact of life, lawsuits are expensive, and the very cost of being put to a lawsuit may in many instances exceed the judgment against which there is the protection of an agreement couched in terms of indemnity. Perhaps it would have been better that the agreement in question spoke to saving harmless *from the expenses* of suits, actions, or claims, but if it is not implicit therein that it is expenses which are being protected against, whatever else could have been in mind by the inept drafters of that provision?

The Oregon case relied upon by Judge Lodge sets forth the same view which I thought prevailed where "save harmless" language is used in an agreement. "An agreement to 'hold harmless' is generally held to include an obligation to defend, or to reimburse for the costs of defense, when an action within the terms of the agreement is filed against the indemnitee." *United States Fire Insurance Co. v. Chrysler Motors Corp.*, 505 P.2d at 1141.

Finally, as a closing note, by way of caveat, making reference to that exact excerpt quoted in the Court's opinion out of *St. Paul Fire and Marine Insurance Co. v. Crosetti Bros.*, the Oregon Supreme Court later declared in *United States Fire Insurance Co. v. Chrysler Motors Corp.*, that it was an "overbroad statement," 505 P.2d at 1140, saying of it that "by its terms the statement applies only to claims against an indemnitee for which he is entitled to indemnification." 505 P.2d at 1141.