**KAYDON ACQUISITION CORP., Plaintiff,**

v.

**CUSTUM MANUFACTURING, INC., f/k/a Gold Star Manufacturing, Inc., America Central Industries, Inc., Lloyd Mefferd, and Floyd Mefferd, Defendants.**

**No. C 03–3004–MWB.**

United States District Court,
N.D. Iowa,
Central Division.

May 11, 2004.

Edward M. Mansfield, Holly M. Logan, James R. Swanger, Michael R. Reck, Belin Lamson McCormick Zumbach Flynn, Des Moines, IA, for Plaintiff.

Paul D. Lundberg, Lundberg Law Firm, Sioux City, IA, Redge O. Berg, Berg & Howe Law Office, Spencer, IA, for Defendants/Counter Claimants.

**MEMORANDUM OPINION AND ORDER REGARDING PLAINTIFF'S MOTION FOR CLARIFICATION OF ORDER ON CROSS–MOTIONS FOR SUMMARY JUDGMENT AND PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ON DEFENDANTS' COUNTERCLAIM**

BENNETT, Chief Judge.

**TABLE OF CONTENTS**

I. *INTRODUCTION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .898

A. Factual Background ............................................................ 899
 1. The Irgens litigation and the indemnity dispute ..................... 899
 2. The sales commission dispute ........................................ 899
B. Procedural Background ....................................................... 900

II. LEGAL ANALYSIS .............................................................. 902
 A. The Motion For "Clarification" ............................................ 902
 1. Arguments of the parties ........................................... 902
 2. Analysis ........................................................... 903
 a. Authority to "clarify" or "reconsider" a summary judgment ruling ............................................................. 903
 b. "Clarification" ................................................ 904
 c. "Reconsideration" ............................................ 906
 i. McNally & Nimergood .................................... 906
 ii. The rule for exonerated indemnitees ..................... 907
 iii. Should the rule be different for settling indemnitees? ........ 907
 iv. The McNally & Nimergood exception ...................... 908
 v. Do any disputed elements remain? ........................ 910
 3. Summary ........................................................... 911
 B. The Motion For Summary Judgment On The Defendants' Counterclaim ................................................................ 911
 1. Arguments of the parties ........................................... 911
 2. Applicable standards ............................................... 912
 3. Analysis ........................................................... 912

III. CONCLUSION ................................................................. 913

This action involves the plaintiff's claim for indemnity from the defendants, following settlement of a products liability action in California state court, and the defendants' counterclaim for breach of a contract to pay commissions. By order dated February 11, 2004, the court granted in part and denied in part the parties' cross-motions for summary judgment on the plaintiff's indemnity claim. *See Kaydon Acquisition Corp. v. Custum Mfg., Inc.*, 301 F.Supp.2d 945 (N.D.Iowa 2004). Presently before the court is the plaintiff's motion for "clarification" of the February 11, 2004, ruling as to the plaintiff's claim for indemnity for attorneys' fees and costs. The defendants concur in the need for "clarification," but take a different position on the proper interpretation of the court's ruling. In a separate motion, the plaintiff also seeks summary judgment on the defendants' remaining counterclaim for unpaid commissions. The defendants resist summary judgment on their remaining counterclaim.

## I. INTRODUCTION

The parties to this action are plaintiff Kaydon Acquisition Corporation (Kaydon) and the following defendants, described collectively as the Mefferd Defendants: Custum Manufacturing, Inc., formerly known as Gold Star Manufacturing, Inc.,[1] American Central Industries, Inc. (ACI), and Lloyd and Floyd Mefferd. This court provided some factual background to this litigation in its prior ruling on the parties' cross-motions for summary judgment. *See Kaydon Acquisition Corp.*, 301 F.Supp.2d at 949–52. Nevertheless, some review of that factual background is necessary to put in context the court's discussion of Kaydon's motion for "clarification" of the ruling on the cross-motions for summary judgment, and some additional facts are necessary to put in context the parties'

---

1. The parties agree that Custum Manufacturing, Inc., has since been dissolved.

dispute concerning the propriety of summary judgment on the Mefferd Defendants' counterclaim. Therefore, the court turns to a recitation of the pertinent facts and factual disputes.

### A. Factual Background

#### 1. The Irgens litigation and the indemnity dispute

The parties agree that Kaydon acquired the assets of the Mefferd Defendants' hydraulic cylinder manufacturing business on March 11, 1997, under an Asset Purchase Agreement. The Asset Purchase Agreement included provisions concerning the Mefferd Defendants' duty to indemnify Kaydon, *inter alia*, for products liability claims "made in connection with the sale of products manufactured by Seller prior to the Closing Date[.]" Defendants' Appendix To Cross–Motions For Summary Judgment at 29 (Asset Purchase Agreement, ¶ 12.2).

By letter dated August 17, 2001, Kaydon "demand[ed] that [the Mefferd Defendants] indemnify and hold Kaydon harmless pursuant to Paragraph 12.2 of the Asset Purchase Agreement" in litigation brought by James and Robert Irgens against Kaydon in the Superior Court of California for the County of San Diego. The Irgens litigation arose from the alleged malfunction of a cherry picker, which utilized a hydraulic cylinder manufactured by the Mefferd Defendants prior to March 11, 1997. Although Kaydon's initial demand was for the Mefferd Defendants to "indemnify and hold [Kaydon] harmless," Kaydon subsequently demanded not only "indemnity," but also a "defense" by the Mefferd Defendants. Except for a brief period, from January to April 2002, during which the Mefferd Defendants assumed Kaydon's defense, the Mefferd Defendants declined to defend or indemnify Kaydon while the Irgens litigation was pending. The Mefferd Defendants were eventually added as defendants in the Irgens litiga-tion, but the Mefferd Defendants and Kaydon were represented by separate counsel, except for the brief period in 2002.

Kaydon or its insurance carrier ultimately settled the Irgens plaintiffs' claims against Kaydon for $350,000, and the Mefferd Defendants ultimately settled the Irgens plaintiffs' claims against them for $15,000. At no time did Kaydon obtain the Mefferd Defendants' written consent to Kaydon's settlement of the Irgens litigation. After the parties reached these settlements with the Irgens plaintiffs, Kaydon filed a motion pursuant to California procedure for a determination by the court that Kaydon's settlement had been in good faith. Although the Mefferd Defendants filed an opposition to Kaydon's motion, the California court granted Kaydon's motion, holding that Kaydon's settlement was reasonable. Upon the conclusion of the Irgens litigation, Kaydon initiated this action for indemnity against the Mefferd Defendants seeking indemnity for the $350,000 that Kaydon paid to settle the Irgens plaintiffs' claims as well as over $200,000 in attorneys' fees and costs that Kaydon incurred in defending against those claims.

#### 2. The sales commission dispute

The parties now assert that additional facts are pertinent to Kaydon's motion for summary judgment on the Mefferd Defendants' counterclaim for unpaid commissions. Kaydon asserts, and the Mefferd Defendants do not dispute, the following facts. On or about May 3, 1998—that is, a little over a year after Kaydon bought the assets of the Mefferd Defendants' hydraulic manufacturing business—Kaydon entered into a Sales Representation Agreement with ACI and Lloyd and Floyd Mefferd. Pursuant to that agreement, the Mefferds and ACI performed duties as sales representatives for Kaydon from May 3, 1998, through July 9, 1999.

Kaydon terminated the agreement, effective July 9, 1999, pursuant to the "without cause" provision of the agreement. Consequently, the Mefferds were to receive commissions of 2.5% of net invoice for orders *received* by Kaydon prior to July 8, 1999, for which Kaydon was *paid* before July 8, 2000.

Although the Mefferds contend that they were not paid all commissions due them, Lloyd Mefferd conceded in his deposition that he couldn't tell at that time if there were orders on which the Mefferds should have received commissions, but did not. Kaydon has declined to make extra copies, at Kaydon's expense, of documents potentially relevant to the Mefferds' claim for commissions, because it would cost Kaydon a great deal of money to do so. However, Kaydon has voluntarily provided the Mefferds with some documents and has made others available for on-site inspection, which the Mefferds have now reviewed. A certified public accounting firm hired by Kaydon has determined that, at most, only about $1,142 of commissions could potentially be due to the Mefferds, although that firm also indicated that there may be valid reasons to exclude some of those fees from the commission worksheets. Kaydon's expert's report also indicates that there is insufficient data to determine whether commissions are owed on additional sales, although he opined that the commission payments were "substantially correct."

The parties dispute the following facts. The Mefferd Defendants dispute Kaydon's contentions that Kaydon has provided them with all of the documents pertinent to the issue of whether the Mefferds have been paid all of the commissions that they are due. In addition, the Mefferds contend that they have never been paid a commission for between $1 million and $2 million worth of business that they "procured" for Kaydon from Vermeer Manufacturing prior to the termination of their Sales Representation Agreement. The parties dispute whether Vermeer made only an unenforceable "oral commitment to future business," as Kaydon contends, or actually placed an order with Kaydon prior to the termination of the Sales Representation Agreement, as the Mefferd Defendants contend. Nevertheless, Kaydon contends that it did pay the Mefferds "thousands of dollars" on Vermeer orders during the year after the termination of the Sales Representation Agreement; indeed, the Mefferd Defendants contend that Kaydon sent them a letter indicating that they had been *overpaid* for commissions. The Mefferd Defendants assert that Kaydon has generated accounting reports, which are different from those generated by Kaydon's normal accounting system, showing that the Mefferds and ACI were paid commissions on sales for which the sales representative is identified as "Hedtke, Inc." Consequently, they contend that the validity of Kaydon's commission statements is questionable. More specifically, the Mefferd Defendants contend that Kaydon's commissions accounting allowed Kaydon to pick and choose the transactions for which the Mefferds and ACI were paid a commission or to avoid paying commissions to them. Kaydon contends that the Mefferd Defendants have offered only "incompetent speculation" concerning the validity of the commission statements.

### B. Procedural Background

On January 16, 2003, Kaydon filed this action, seeking indemnity for both its settlement costs and its defense costs in the Irgens litigation. The Mefferd Defendants filed an answer and counterclaims on February 11, 2003. The Mefferd Defendants originally asserted counterclaims for fraudulent inducement to enter into the Sales Representation Agreement, breach of a contract to pay commissions, and de-

claratory judgment that they have no duty to indemnify Kaydon owing to Kaydon's failure to obtain their consent to settlement. The parties agree that the Mefferd Defendants have abandoned their counterclaim for fraudulent inducement to enter into the Sales Representation Agreement. Moreover, the Mefferd Defendants' counterclaim for declaratory judgment essentially mirrors Kaydon's claim for indemnity. Thus, the parties agree that the only counterclaim still at issue that is factually and legally separate from Kaydon's indemnity claim is the Mefferd Defendants' counterclaim for unpaid commissions.

On December 8, 2003, the Mefferd Defendants filed a motion for summary judgment (docket no. 13) on Kaydon's indemnity claim, and on January 4, 2004, Kaydon filed a cross-motion for summary judgment (docket no. 14) on the same claim. The court heard oral arguments on the parties' cross-motions for summary judgment on February 6, 2004. On February 11, 2004, the court entered a ruling granting in part and denying in part each parties' motion for summary judgment. *See Kaydon Acquisition Corp.*, 301 F.Supp.2d 945; *see also* docket no. 27. The court summarized its conclusions in that ruling as follows:

> [A]lthough the parties' cross-motions for summary judgment resolve various issues, the motions do not resolve Kaydon's indemnity claim in its entirety. More specifically, the Mefferd Defendants are entitled to summary judgment in their favor that Kaydon's failure to obtain their written consent to Kaydon's settlement with the Irgens plaintiffs bars Kaydon from recovering the amount of that settlement from the Mefferd Defendants, *unless* Kaydon establishes at trial that the Mefferd Defendants had already repudiated the indemnity agreement by stating that they could not perform—which is an issue on which the court finds genuine issues of

material fact. However, even assuming that the Mefferd Defendants did not repudiate the agreement, the Mefferd Defendants' motion for summary judgment on Kaydon's indemnity claim must be denied as to Kaydon's claim for attorneys' fees and costs in the Irgens litigation, because Kaydon's failure to obtain written consent to settlement does not, as a matter of law, bar that portion of Kaydon's indemnity claim.

By the same token, Kaydon is entitled to summary judgment in its favor that its failure to obtain written consent to settlement does not bar that portion of its indemnity claim seeking to recover its attorneys' fees and costs in the Irgens litigation. However, Kaydon is not entitled to summary judgment in its favor on its indemnity claim as a whole. Rather, the court finds that the Mefferd Defendants did not, as a matter of law, anticipatorily breach the indemnity agreement by refusing to defend Kaydon, refusing to pay Kaydon's on-going attorneys' fees and costs, or by asserting that there was no indemnity, because Kaydon was the "wrong party" to the Irgens litigation. Kaydon is also not entitled to summary judgment in its favor on its indemnity claim, because there are genuine issues of material fact as to whether the Mefferd Defendants made statements that they could not perform that were sufficient to constitute repudiation of the indemnity agreement. Finally, *if there is no other bar to its indemnity claim, to recover indemnity, Kaydon must still establish at trial the existence of its liability to the injured party as an element of recovery for indemnification.*

*Kaydon Acquisition Corp.*, 301 F.Supp.2d at 969 (emphasis added).

On March 3, 2004, Kaydon filed its Motion For Clarification Of Summary Judgment Ruling (docket no. 28). In that motion, Kaydon asserts that the parties are

in disagreement about the meaning of the last sentence of the February 11, 2004, ruling quoted just above: In Kaydon's view, the statement applies only to the $350,000 Kaydon paid in settlement, but does not require Kaydon to establish at trial the existence of its liability to the Irgens plaintiffs as an element of recovery for indemnification for *defense costs*, while the Mefferd Defendants contend that the statement applies to *both* the settlement costs and defense costs. Therefore, Kaydon requested clarification of the court's ruling, representing that the Mefferd Defendants joined in the request for clarification, although they had a different interpretation of the court's ruling. The Mefferd Defendants responded to the Motion For Clarification on March 10, 2004 (docket no. 33), also requesting clarification of the ruling, but asserting, as well, their view of the proper interpretation of the court's ruling with regard to defense costs.

On March 14, 2004, Kaydon also filed a Motion For Summary Judgment On Defendants' Counterclaim (docket no. 37). In that motion, Kaydon seeks summary judgment on what it contends is the only counterclaim now asserted by the Mefferd Defendants, the counterclaim for unpaid commissions. The Mefferd Defendants resisted Kaydon's motion on April 20, 2004 (docket no. 45), and Kaydon filed a reply in further support of its motion on April 22, 2004 (docket no. 46).

Neither party requested oral arguments on either of Kaydon's pending motions. Therefore, those motions are now fully submitted on the moving papers and written arguments.

## II. LEGAL ANALYSIS

### A. The Motion For "Clarification"

### 1. Arguments of the parties

Kaydon argues that clarification of the court's ruling on cross-motions for summary judgment is appropriate, because the court could not have intended to require Kaydon to prove its liability to the Irgens plaintiffs before Kaydon could obtain indemnification from the Mefferd Defendants for its defense costs in the Irgens litigation. This is so, Kaydon argues, because the rule for indemnification for defense costs is not the same as the rule for indemnification for settlement costs. Kaydon does not presently dispute that, under Iowa law, a party who settles an injured party's claim must prove that it would have been liable to the injured party to obtain indemnification *for the settlement.* Kaydon recognizes that such a rule is based on the principle that someone who chooses to make a purely voluntary payment should not be able to obtain indemnification from another. However, Kaydon does argue that, a different rule should apply to indemnification for defense costs, because they are not really "voluntary" payments, and because, if a party had to prove that it would have been liable to the injured party to be indemnified *for defense costs,* then no one who successfully defended a lawsuit could ever obtain indemnification for such costs from anybody else, which Kaydon argues is obviously not the law.

Kaydon cites various cases from Iowa state and federal courts that Kaydon characterizes as permitting indemnification for defense costs notwithstanding that the party seeking indemnity had been exonerated on the injured party's claim at trial or had not yet been found liable. Kaydon asserts that other jurisdictions also recognize that the proof required for indemnification for defense costs is different from the proof required for indemnification for satisfaction of a claim. Indeed, Kaydon asserts that the rule is that, if the injured party's claim against the indemnitee is covered by the indemnity agreement, then the indemnitee is entitled to recover from the

indemnitor the reasonable expenses incurred by the indemnitee, regardless of whether the indemnitee is ultimately held not liable on the injured party's claim.

Thus, Kaydon asserts that the only requirements for proof of its right to indemnification from the Mefferd Defendants for defense costs in the Irgens litigation are the contractual requirements that indemnity is claimed for "costs and expenses" that were "incurred by [Kaydon] from or related to" a "product liability claim" that was "made in connection with the sale of products manufactured by [the Mefferd Defendants] prior to the Closing date." The indemnity agreement, Kaydon contends, does *not* require that the product liability claim be valid, only that it be "made." Because Kaydon contends that the required elements are undisputed, Kaydon requests that the court clarify that Kaydon does not have to prove that it would have been liable to the Irgens plaintiffs as a precondition to obtaining indemnification from the Mefferd Defendants for Kaydon's defense costs, but that the indemnity agreement, instead, requires the Mefferd Defendants to pay those costs.

Although the Mefferd Defendants concur in the need for clarification, they contend in their response to Kaydon's motion that they have never admitted liability for Kaydon's defense costs in the Irgens litigation, even if they admitted that Kaydon's defense costs were "reasonable." They contend, further, that Kaydon has not pointed to any record evidence demonstrating that the Mefferd Defendants have admitted responsibility for those defense costs. Moreover, the Mefferd Defendants contend that the court expressly stated that, even assuming the amount of reasonable attorney fees and costs is not in dispute, the Mefferd Defendants are still entitled to put Kaydon to the proof on its entitlement to *any* indemnity. Therefore, the Mefferd Defendants contend that this court recognized that Iowa law requires that Kaydon must establish its legal liability to the Irgens plaintiffs before Kaydon is entitled to recover any indemnity from the Mefferd Defendants for *either* the settlement or defense costs. The Mefferd Defendants contend that Kaydon is now hamstrung by its previous contention, in the Irgens litigation, that it had no liability to the Irgens plaintiffs, because it was not a "successor" to the Mefferd Defendants' business as to products liability claims for a product that was made before Kaydon bought the assets of that business. Therefore, because Kaydon settled with the Irgens plaintiffs, the Mefferd Defendants contend that, if Kaydon cannot establish its liability to the Irgens plaintiffs, Kaydon is not entitled to *any* indemnification from the Mefferd Defendants.

### 2. Analysis

#### a. Authority to "clarify" or "reconsider" a summary judgment ruling

The court reads Kaydon's motion for "clarification" as involving a request for both "clarification" and, at least in the alternative, "reconsideration." That is, Kaydon contends that the court simply didn't mean what the Mefferd Defendants think the court meant, so that the court's ruling must be "clarified," but if the court *did* mean what the Mefferd Defendants think the court meant, then the court was wrong, and no proof of Kaydon's liability to the Irgens plaintiffs is required before Kaydon can obtain indemnity for defense costs.

In *Helm Financial Corporation v. Iowa Northern Railway Company*, 214 F.Supp.2d 934 (N.D.Iowa 2002), this court explained its authority to reconsider a prior ruling on summary judgment motions:

As this court recently explained in *EEOC v. American Home Products Corp.*, 165 F.Supp.2d 886 (N.D.Iowa

2001), although the Federal Rules of Civil Procedure do not seem to provide any basis for a motion to reconsider this court's *granting* of partial summary judgment, that means that this court actually has more, rather than less, discretion to alter or amend such an interlocutory order than is provided by either Rule 59(e) or Rule 60(b) of the Federal Rules of Civil Procedure. *See American Home Prods. Corp.*, 165 F.Supp.2d at 892. This court has also held that courts retain the power to reconsider and revise an order *denying* summary judgment, which is also interlocutory in nature, up until the time a final judgment is entered. *See Longstreth v. Copple*, 189 F.R.D. 401, 403 (N.D.Iowa 1999). Therefore, the court has the authority to correct, reconsider, alter, or amend the challenged portions of its [summary judgment ruling], should the court decide that it is appropriate or necessary to do so.

*Helm Fin. Corp.*, 214 F.Supp.2d at 999 (emphasis in the original).

■ As in *Helm Financial*, the court is satisfied here that it has the authority to "clarify," and if appropriate, "reconsider" the challenged portion of its February 11, 2004, ruling, which granted in part and denied in part the parties' cross-motions for summary judgment, at least in the absence of intervening appellate review. *See, e.g., Engineered Prods. Co. v. Donaldson Co., Inc.*, 313 F.Supp.2d 951, 977–78, 2004 WL 801646, *20–*21 (N.D.Iowa 2004) (considering the effect, under Federal Circuit law, of intervening appellate review on a district court's ability to "reconsider" a prior summary judgment ruling in a patent case). Moreover, the Iowa Supreme Court has "acknowledge[d] the complexity of the law of indemnification and the challenges that can confront judges and lawyers in its application to particular factual circumstances." *McNally & Nimergood v. Neu-*

*mann–Kiewit Constructors, Inc.*, 648 N.W.2d 564, 567 (Iowa 2002). Therefore, "clarification" or "reconsideration" may be doubly appropriate, where the court's ruling addressed some of those complex issues.

### b. "Clarification"

■ Taking a motion for "clarification" strictly in the sense of asking what the court's ruling meant, the court begins with an examination of the text and context of the challenged portion of the ruling. Kaydon asks for "clarification" of the following sentence in the court's "Conclusion": "[I]f there is no other bar to its indemnity claim, to recover indemnity, Kaydon must still establish at trial the existence of its liability to the injured party as an element of recovery for indemnification." *Kaydon Acquisition Corp.*, 301 F.Supp.2d at 969.

This statement was a summary of a more extensive analysis in the February 11, 2004, ruling of the question of when Kaydon's claim for indemnity for defense costs accrued. *See id.* at 958–60. In that discussion, the court addressed Kaydon's contention that the Mefferd Defendants had an "on-going duty" to pay Kaydon's defense costs as those costs were incurred. *Id.* The court rejected Kaydon's contention, because "[n]either the language of the Asset Purchase Agreement nor the controlling law warrants Kaydon's conclusion that its claim for indemnity for attorneys' fees and costs accrued dollar-by-dollar as those fees and costs were incurred." *Id.* at 960. The court also found that there were additional requirements to recover indemnity for defense costs:

Moreover, to establish a contractual right to indemnity, where the purported indemnitee has settled a claim, as is the case here, "an indemnitee ... must establish the existence of its liability to the injured party as an element of recovery for indemnification." *McNally & Nim-*

*ergood [v. Neumann–Kiewit Constructors, Inc.],* 648 N.W.2d [564,] 57[5] [ (Iowa 2002) ] (noting that, in addition, "the indemnitee must establish the settlement was reasonable, and that the indemnitor had a duty to indemnify the indemnitee"). In other words, as the Mefferd Defendants argue, indemnity is not "automatic," *see Vermeer [v. Sneller],* 190 N.W.2d [389,] 392 [ (Iowa 1971) ] ("Generally, the right to indemnification is not automatic and is not an unqualified promise to pay by the indemnitor."), and "a settlement does not constitute an adjudication of the issues of negligence with the injured party and does not, by itself, bar further adjudication on the merits of a claim against another party." *McNally & Nimergood,* 648 N.W.2d at 575. Thus, the Mefferd Defendants had no obligation to pay anything to Kaydon while the Irgens litigation was pending, and even after that litigation was settled, the Mefferd Defendants were still entitled to put Kaydon to the proof on Kaydon's claim of indemnity. *See id.*

Thus, as a matter of law, the Mefferd Defendants were not under any "ongoing obligation" to pay Kaydon's attorneys' fees or costs in the Irgens litigation.

*Kaydon Acquisition Corp.,* 301 F.Supp.2d at 960–61.[2] Thus, the court expressly held that Kaydon, as a settling party, is required to prove its liability to the Irgens plaintiffs, as the injured parties, to recover indemnification for defense costs from the Mefferd Defendants.

In a later portion of the February 11, 2004, ruling, the court addressed the effect of Kaydon's settlement without the Mefferd Defendants' written consent. *See id.*

at 966. The court noted that the "written consent" provision expressly provided that lack of written consent would only bar indemnity *for the settlement,* but did not provide that lack of written consent would bar or limit the indemnitor's liability for the indemnitee's attorneys' fees and costs. *Id.* The court then summarized the effect of this contractual language, and what issues remained to be proved to establish indemnity for defense costs, as follows:

Kaydon is consequently entitled to summary judgment that its failure to obtain the Mefferd Defendants' written consent to settlement does not bar Kaydon's indemnity claim for its attorneys' fees and costs in the Irgens litigation. Kaydon argues, further, that the Mefferd Defendants have never disputed the reasonableness of those fees and costs, and the court agrees. However, even assuming the amount of reasonable attorneys' fees and costs is not in dispute, as explained above, the Mefferd Defendants are still entitled to put Kaydon to the proof on its entitlement to any indemnity. *See McNally & Nimergood,* 648 N.W.2d at 57[5] (an indemnitee who has settled a third party's claim and seeks indemnity pursuant to a contract "must establish the existence of its liability to the injured party as an element of recovery for indemnification," and also "must establish the settlement was reasonable, and that the indemnitor had a duty to indemnify the indemnitee").

*Kaydon Acquisition Corp.,* 301 F.Supp.2d at 966. Thus, the court reiterated its reading of Iowa law as requiring a settling indemnitee to prove its liability to the injured party to obtain indemnification *for defense costs,* as well as *for the settlement.*

---

**2.** The first citation to *McNally & Nimergood* in this quotation cites 648 N.W.2d at 576, but the court now finds that the quoted language from *McNally & Nimergood* appears at 648

N.W.2d at 575. Citations to *McNally & Nimergood* in the remainder of this opinion correct any other typographical errors in page citations.

Upon this reprise of the pertinent sections of the February 11, 2004, ruling, it is apparent that the Mefferd Defendants, not Kaydon, have correctly interpreted the portion of that ruling on which the parties sought "clarification."

### c. "Reconsideration"

Because the February 11, 2004, ruling says what the Mefferd Defendants, not Kaydon, thought it said, the court must take up Kaydon's further contention that the court's ruling was wrong. This portion of the court's analysis begins with a re-examination of *McNally & Nimergood v. Neumann–Kiewit Constructors, Inc.*, 648 N.W.2d 564 (Iowa 2002), which is the decision on which this court relied for its holding on the pertinent issue in the February 11, 2004, ruling. The court will then turn to the additional arguments that Kaydon now asserts in support of its contention that the court's holding was erroneous.

#### i. *McNally & Nimergood.* In its February 11, 2004, ruling, this court relied on the following portion of the Iowa Supreme Court's decision in *McNally & Nimergood*:

> This case gives rise to two important and related concepts of indemnification. The first principle is that a party who seeks to establish a right to indemnity in an independent action must normally plead and prove it was liable to the injured party. *Ke–Wash Co. v. Stauffer Chem. Co.*, 177 N.W.2d 5, 9–10 (Iowa 1970). The rationale for this rule is tied to the fundamental concept that indemnity involves the shifting of responsibility of liability for loss from one who is legally responsible to another. *Id.* at 10. Thus, if an indemnitee had no liability for the loss in the inception, then any payment made by the indemnitee is considered purely voluntary and not subject to indemnification. *See id.* at 10–11. "Indemnity against loss [ ] does not cover loss[ ] for which [an] indemnitee is

not liable to a third person...." 41 Am. Jur.2d Indemnity § 46, at 380 (1995).

> *The requirement to plead and prove liability established in Ke–Wash applies in independent actions for indemnity where the underlying claim for damages was settled without an adjudication of liability.* *Ke–Wash Co.*, 177 N.W.2d at 11–12. Normally, a judgment in the underlying action will establish the essential liability to pursue indemnification. On the other hand, a settlement does not constitute an adjudication of the issues of negligence with the injured party and does not, by itself, bar further adjudication on the merits of a claim against another party. *See Brosamle v. Mapco Gas Prods. Inc.*, 427 N.W.2d 473, 475–76 (Iowa 1988); *Buchhop v. Gen. Growth Props. & Gen. Growth Mgmt. Corp.*, 235 N.W.2d 301, 302 (Iowa 1975) (settlement of underlying claim for damages does not necessarily defeat right to indemnification). *Thus, an indemnitee who settles the underlying claim must establish the existence of its liability to the injured party as an element of recovery for indemnification.* *Ke–Wash Co.*, 177 N.W.2d at 11. *Additionally, the indemnitee must establish the settlement was reasonable, and that the indemnitor had a duty to indemnify the indemnitee.* *Id.*

*McNally & Nimergood*, 648 N.W.2d at 574–75 (emphasis added). This statement of the rule in *McNally & Nimergood* does not distinguish between indemnity for the *settlement* and indemnity *for defense costs*. Rather, it speaks in terms of a settling indemnitee's "recovery for indemnification," without limitation, as requiring proof that the indemnitee was liable to the injured party. Thus, the decision upon which the court relied in its February 11, 2004, ruling appears to support this court's original holding that, to recover indemnity for defense costs, a settling party must

ordinarily prove, *inter alia*, that it was liable to the injured party.

#### ii. The rule for exonerated indemnitees.
Kaydon nevertheless contends that the rule cannot be that a settling indemnitee must prove that it was liable to the injured party in order to be indemnified for attorneys' fees and costs. Kaydon argues, first, that such a rule would mean that no one who successfully defended a lawsuit could ever obtain indemnification from anybody else. Kaydon then cites various cases holding that an indemnitee who has been exonerated or not yet found liable on the injured party's claim does not have to prove that it was liable to the injured party to be indemnified for defense costs, but instead is entitled to recover any reasonable expenses incurred in the main action, if that action is covered by the indemnity agreement.

Even accepting that the cases on which Kaydon relies hold that an exonerated indemnitee does not have to prove that it was liable to the injured party to recover indemnity for defense costs,[3] Kaydon's reasoning is flawed: A rule that a *settling party* must prove that it was liable to an injured party before the settling party can obtain indemnity for defense costs has no impact whatsoever on what an *exonerated party* must prove to obtain indemnity for defense costs, or vice versa. Rather, the two kinds of indemnitees are distinguished precisely by whether or not they settled with the injured party.

#### iii. Should the rule be different for settling indemnitees?
The court concludes that the proper question is, should a

---

**3.** None of the cases cited by Kaydon involves a *settling indemnitee*, as is the case here; rather, each involves an exonerated indemnitee or an indemnitee whose liability has not yet been determined, but the indemnity agreement nevertheless requires payment of defense costs in the interim to determination of liability. *See Bunce v. Skyline Harvestore Systems, Inc.*, 348 N.W.2d 248, 249–51 (Iowa 1984) (holding that an indemnitee who had obtained a directed verdict on the injured party's claim was entitled to indemnification for its defense costs); *Moore v. Williams*, 902 F.Supp. 957, 966 (N.D.Iowa 1994) (holding that the indemnitee was entitled to indemnity for defense costs, even though he had not been found liable and continued to deny liability to the injured party, based on construction of the indemnity agreement as unambiguously requiring the indemnitor to pay the indemnitee's "interim legal fees," or to advance those fees, until and unless the indemnitee was found guilty of misconduct as a fiduciary); *Smithson v. Wolfe*, 1999 WL 33656866, *3–4 (N.D.Iowa 1999) (holding that, under a contract requiring indemnification for claims and defense costs unless the indemnitee was negligent, the indemnitees were entitled to indemnification until the indemnitees were *found* negligent, and denying the indemnitor's motion for summary judgment that it was not required to pay the

indemnitees' defense costs); *see also Starobin v. Randolph Computer Corp.*, 689 F.Supp. 323, 327 (S.D.N.Y.1988) ("It is not necessary that an indemnitee have sustained actual damages in the main action in order to be entitled to enforce an agreement as to indemnification for attorneys' fees."); *McCulloch v. Grubb & Ellis Co.*, 1989 WL 87939, *5 (D.Or.1989) ("The rule in most jurisdictions for indemnification of defense costs is different, however, from that of satisfaction of the claim itself. '[R]egardless of whether indemnity is based upon an implied or an express agreement, when a claim is made against an indemnitee for which he is entitled to indemnification, the indemnitor is liable for any reasonable expenses incurred by the indemnitee in defending against such claim regardless of whether the indemnitee is ultimately held not liable.' *St. Paul Fire & Marine Ins. Co. v. Crosetti Bros., Inc.*, 256 Or. 576, 579, 475 P.2d 69 (1970). The critical inquiry is whether the indemnitor had an obligation to defend the indemnitee or pay the costs of defense if the claim was covered under the indemnity agreement. *Id.* at 580, 475 P.2d 69. If so, the indemnitor is liable for the reasonable costs incurred by the indemnitee in defending the suit."); *Farber v. Idaho*, 106 Idaho 677, 682 P.2d 630, 631 (1984) (also quoting *Crosetti Bros., Inc.*, 256 Or. 576, 475 P.2d at 71).

*settling indemnitee* be required to prove that it was liable to the injured party to be indemnified for defense costs, even if an *exonerated indemnitee* would not have to do so? None of the cases cited by Kaydon address that question. However, Kaydon does argue that defense costs are not "voluntary" expenses in the same sense that a settlement is a "voluntary" payment—where the apparent "voluntariness" of settlement is the justification for requiring the settling party to prove its liability to the injured party in order to recover indemnity. *See, e.g., McNally & Nimergood*, 648 N.W.2d at 574 ("The rationale for this rule [that a party seeking indemnity in an independent action must normally plead and prove it was liable to the injured party] is tied to the fundamental concept that indemnity involves the shifting of responsibility of liability for loss from one who is legally responsible to another. Thus, if an indemnitee had no liability for the loss in the inception, then any payment made by the indemnitee is considered purely voluntary and not subject to indemnification.").

The court agrees that a party against whom an injured party brings suit has no choice but to incur defense costs, particularly where an indemnitor has declined the opportunity to assume the defense of the action. Moreover, the court finds some out-of-state authority for the proposition that a *settling indemnitee* is entitled to indemnification for its reasonable defense costs, without a requirement that the settling indemnitee prove that it was liable to the injured party. In *Bethlehem Steel Corp. v. Sercon Corp.*, 654 N.E.2d 1163, 1168 (Ind.Ct.App.1995), the Indiana Court of Appeals held,

> An indemnitee, who incurs legal expenses through defending an action against him for which he is entitled to indemnification, is entitled to recover the expenses of creating his defense, including reasonable attorney fees.

This is especially true where the indemnitor has been notified of the suit and refuses the opportunity to defend it. The indemnitee may recover attorney fees from the indemnitor incurred through an original action which is settled, and also for the cost of prosecuting the indemnity clause.

*Bethlehem Steel Corp.*, 654 N.E.2d at 1168–69 (quoting *Zebrowski & Assoc. v. City of Indianapolis*, 457 N.E.2d 259, 261 (Ind.Ct.App.1983)). However, to the extent that *Bethlehem Steel* can be read to permit indemnification of a settling indemnitee's defense costs in the absence of proof that the indemnitee was liable to the injured party with whom the indemnitee settled, *Bethlehem Steel* appears to be contrary to controlling Iowa authority in *McNally & Nimergood*, 648 N.W.2d at 574–75. As mentioned above, none of the cases applying Iowa law cited by Kaydon in support of its motion for "clarification" addresses the situation in which the indemnitee had *settled* the injured party's claim.

 *iv. The McNally & Nimergood exception.* On the other hand, the Iowa Supreme Court's decision in *McNally & Nimergood*, itself, identifies an exception to the general rule that a settling indemnitor must prove its liability to the injured party to recover indemnification. The court explained, "We specifically indicated in *Ke–Wash [Co. v. Stauffer Chem. Co.*, 177 N.W.2d 5, 9–10 (Iowa 1970),] that the need for the indemnitee to prove its liability to the injured party does not apply 'where there is an expressed agreement for indemnification providing otherwise.'" *McNally & Nimergood*, 648 N.W.2d at 575 (quoting *Ke–Wash*, 177 N.W.2d at 11). Kaydon did not argue that this exception applied in its cross-motion for summary judgment on its indemnity claim; rather, Kaydon argued that the indemnity agree-

ment created a "duty to defend" or an "ongoing duty" to pay Kaydon's attorneys' fees and costs as they were incurred, which the court rejected. *See Kaydon,* 301 F.Supp.2d at 952–53 (summarizing the parties' arguments) & 957–61 (analyzing Kaydon's contention that the agreement established a "duty to defend" or an "ongoing duty" to pay Kaydon's costs of defense). Kaydon simply never previously addressed the significance of the general rule stated in *McNally & Nimergood* for the proof required of settling indemnitees, let alone whether this case presented the exception to the general rule also discussed in *McNally & Nimergood.*[4] However, Kaydon now argues that the indemnity agreement at issue here expressly states the only requirements for recovery of defense costs, whether the injured party's case was terminated by settlement or judgment. Kaydon points out that a requirement that Kaydon prove that it was liable to the injured party is not among those contractual requirements.

In *McNally & Nimergood,* the Iowa Supreme Court noted that acknowledgment of an exception "where there is an expressed agreement for indemnification providing otherwise" was "not intended as a blanket limitation for all claims based on expressed indemnification, but exists to recognize that express indemnification agreements can alter the common law rules on indemnity by calling for indemnification in the absence of underlying liability between the indemnitee and the injured party." *Id.* The court cited as an example of the exception an express agreement revealing that " 'it was the intention of the parties that the [indemnitor] should indemnify [the indemnitee] irrespective of whether any claim arose by reason of the negligence of [the indemnitee], or for any reasons.' " *Id.* (quoting *Robert & Co. Assocs. v. Pinkerton & Laws Co.,* 120 Ga. App. 29, 32, 169 S.E.2d 360, 363 (1969)). On the other hand, the court stated that, "if an expressed agreement does not reveal an intent to alter the rule against voluntary payment, the fundamental rules of liability for loss to the injured party applies, and the claim for indemnity must be viewed in its traditional form as shifting liability for a loss from one person who is legally responsible to another person." *Id.* In *McNally & Nimergood,* the court found that, although the parties limited indemnification for liability or loss based on a defect in the crane at issue in their contract, there was "no further indication the parties intended to alter the concept of indemnification by imposing a duty on Neumann to reimburse McNally in the event McNally paid for the damages to an injured person when it was not liable to the injured person for the damages." *Id.* at 575–76.

Here, the indemnification provision in the contract between Kaydon and the Mefferd Defendants provides as follows:

> 12.2 *Indemnification by Seller.* Seller, ACI and the Mefferds shall, jointly and severally, *indemnify and*

4. Indeed, even now, Kaydon only raises, but declines to press, an argument that the indemnification agreement in this case provides an express contractual exception to the requirement that Kaydon prove its liability to the Irgens plaintiffs as a condition for recovery of indemnification from the Mefferd Defendants *for the settlement.* Because Kaydon does not now press the issue, the court takes no position on whether or not the express indemnification agreement between Kaydon and the Mefferd Defendants reveals an "intent to alter the rule against voluntary payment" for indemnification for the cost of the settlement. *Id.* The court observes, however, that the provisions of the indemnity agreement that purportedly establish an exception to the general rule in *McNally & Nimergood* for proof of entitlement to defense costs would also seem to apply to settlement costs or other damages incurred by the indemnitee.

*hold* Buyer (and its shareholders, directors, officers, employees and affiliates) *harmless from and against any and all claims, liabilities* (including any strict liabilities with respect to any Loss specified under clause (iv) below), fines, penalties, natural resource damages, losses, damages, (including incidental or consequential damages such as lost profits resulting from any disruption of operation of the Assets), *costs and expenses (including costs and counsel fees) incurred by Buyer from or related to any of the following* (hereinafter called a "Loss" or "Losses"):

\* \* \* \* \* \*

(iii) *any product liability claim* or other claim for the breach of any express or implied warranty, and any other claim of whatever nature, and from all damages resulting therefrom, which may be *made in connection with the sale of products manufactured by Seller prior to the Closing Date[.]*

Defendants' Appendix To Cross–Motions For Summary Judgment at 29 (emphasis added). Here, the indemnification agreement expressly provides for indemnification not only for "liabilities," but for "any and all claims" and "costs and expenses," expressly including "costs and counsel fees," incurred by Kaydon "from or related to" any claim covered by the indemnity agreement, without reference to Kaydon's liability to the claimant. *Id.* This language reveals that it was the intention of the parties that the Mefferd Defendants should indemnify Kaydon irrespective of whether any claim arose by reason of the negligence of Kaydon or for any reason. *See McNally & Nimergood,* 648 N.W.2d at 575 (noting that this was the intention of the parties, as revealed in the language of their indemnification agreement, in *Robert & Co. Assocs.,* 169 S.E.2d at 363, the court's exemplar of language creating an

exception). Thus, the court finds that this language is sufficient to indicate that the parties intended to alter the concept of indemnification by imposing a duty on the Mefferd Defendants to reimburse Kaydon for defense costs in the event Kaydon defended the claims of an injured person when Kaydon was *not* liable to the injured person for the damages. *Cf. McNally & Nimergood,* 648 N.W.2d at 575–76 (applying this standard, but finding that it had *not* been met in that case). Consequently, even though Kaydon is a settling indemnitee—and contrary to the court's February 11, 2004, ruling—Kaydon is *not* required to prove its liability to the Irgens plaintiffs to recover indemnification from the Mefferd Defendants for defense costs in defending the Irgens plaintiffs' claims.

***v. Do any disputed elements remain?***
Finally, then, the court turns to the question of whether any genuinely disputed elements remain, precluding summary judgment in Kaydon's favor on its claim for indemnification from the Mefferd Defendants for defense costs in the Irgens litigation. *See, e.g.,* FED. R. CIV. P. 56(c). Because proof that Kaydon was liable to the Irgens plaintiffs is no longer a required element, the elements that Kaydon must establish to recover indemnity are that the defense costs are reasonable and that the Mefferd Defendants have a duty to indemnify Kaydon. *Cf. McNally & Nimergood,* 648 N.W.2d at 575 (citing the elements to recover "indemnification" generally, stated in terms of the reasonableness of the "settlement"). For purposes of a summary judgment motion, Kaydon must show that these elements are undisputed. FED. R. CIV. P. 56(c). The Mefferd Defendants have never, and do not now, dispute the "reasonableness" of Kaydon's defense costs in the Irgens litigation. Moreover, it is plain that the Irgens plaintiffs' products liability claim was based on a hydraulic cylinder manufactured by the

Mefferd Defendants prior to the closing date on Kaydon's purchase of the assets of the Mefferd Defendants' manufacturing business. Thus, the Irgens plaintiffs' claim falls within the express terms of the indemnity agreement. *See* Defendants' Appendix To Cross–Motions For Summary Judgment at 29 (Asset Purchase Agreement, ¶ 12.2) (providing for indemnity for "any product liability claim ... which may be made in connection with the sale of products manufactured by Seller prior to the Closing Date[.]"). Therefore, Kaydon is entitled to summary judgment on that part of its indemnity claim seeking indemnification for defense costs in the Irgens litigation.

### 3. Summary

Having concluded that it has the authority to "clarify" and "reconsider" its prior ruling on cross-motions for summary judgment, and that such "clarification" or "reconsideration" is appropriate in the circumstances of this case, the court now reaches a different conclusion on the challenged portion of its prior ruling. In the prior ruling, citing controlling Iowa authority, and in the absence of any argument for an exception to the rule stated in that authority, the court held that, in order to recover indemnification for defense costs, Kaydon, as a *settling indemnitee,* must prove, *inter alia,* that it was liable to the Irgens plaintiffs. *See Kaydon,* 301 F.Supp.2d at 960–61 (citing *McNally & Nimergood,* 648 N.W.2d at 575), 966 (same) & 969 (summarizing its holding). Upon reconsideration, the court finds that Kaydon has now established an exception to that general rule, in that the indemnity agreement between the parties is sufficient to indicate that the parties intended to alter the general rule, and instead to impose a duty on the Mefferd Defendants to reimburse Kaydon for defense costs in the event that Kaydon defended claims falling within the terms of the indemnity

agreement, without regard to Kaydon's liability on those claims. Thus, even though Kaydon settled the Irgens plaintiffs' claims, Kaydon is *not* required to prove its liability to the Irgens plaintiffs to recover indemnification from the Mefferd Defendants for defense costs in defending the Irgens plaintiffs' claims. Also, there being no elements of Kaydon's claim for indemnification for defense costs genuinely in dispute, the court concludes, upon reconsideration, that Kaydon is entitled to summary judgment on that part of its indemnity claim seeking indemnification for defense costs in the Irgens litigation.

### B. The Motion For Summary Judgment On The Defendants' Counterclaim

#### 1. Arguments of the parties

Kaydon's motion for summary judgment on the Mefferd Defendants' counterclaim for unpaid commissions can be disposed of much more briefly. Kaydon contends that the Mefferd Defendants have not offered any proof of any order on which they did not receive a commission or how much that missing commission would be. Indeed, Kaydon contends that Lloyd Mefferd acknowledged in deposition that he did not know if any commissions were not paid. The Mefferd Defendants respond that Kaydon's own expert has acknowledged that at least $1,100 in commissions may be due the Mefferd Defendants and that Kaydon cannot confirm that the Mefferd Defendants were actually paid the commissions listed on various commission statements. Thus, the Mefferd Defendants contend that there are genuine issues of material fact as to how much money Kaydon owes the Mefferd Defendants for commissions under the Sales Representation Agreement. The Mefferd Defendants also contend that, from irregularities in commissions accounting and statements, a jury

could reasonably find that Kaydon kept the Mefferd Defendants "off the books" to control what commissions were or were not paid them. In reply, Kaydon contends that there is no competent evidence that Vermeer ever actually "ordered" the millions of dollars worth of products for which the Mefferd Defendants assert that they were not paid, instead of making only unenforceable oral "commitments" to continue doing business with Kaydon. Kaydon also asserts explanations for the supposed accounting irregularities, which Kaydon contends demonstrates that the Mefferd Defendants' contentions are "fanciful." Kaydon also contends that the Mefferd Defendants have mischaracterized Kaydon's expert's findings, because the expert actually opined that the "commission schedules are substantially correct," and that only 24 invoices out of 1,176 *potentially* showed unpaid commissions, for which the expert recognized that there might be valid explanations.

### 2. Applicable standards

As this court explained in ruling on the parties' cross-motions for summary judgment on Kaydon's indemnity claims, the party moving for summary judgment bears "the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record which show lack of a genuine issue." *Hartnagel v. Norman,* 953 F.2d 394, 395 (8th Cir.1992) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)); *see also Rose–Maston v. NME Hosps., Inc.,* 133 F.3d 1104, 1107 (8th Cir.1998); *Reed v. Woodruff County, Ark.,* 7 F.3d 808, 810 (8th Cir. 1993). When the moving party has carried its burden under Rule 56(c), the party opposing summary judgment is required under Rule 56(e) to go beyond the pleadings, and by affidavits, or by the "depositions, answers to interrogatories, and ad-

missions on file," designate "specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e); *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548; *Rabushka ex. rel. United States v. Crane Co.,* 122 F.3d 559, 562 (8th Cir.1997), *cert. denied,* 523 U.S. 1040, 118 S.Ct. 1336, 140 L.Ed.2d 498 (1998); *McLaughlin v. Esselte Pendaflex Corp.,* 50 F.3d 507, 511 (8th Cir.1995); *Beyerbach v. Sears,* 49 F.3d 1324, 1325 (8th Cir.1995).

■ The Mefferd Defendants' claim of failure to pay commissions is a breach-of-contract claim. Therefore, to prove such a claim under Iowa law, the Mefferd Defendants must prove the following elements: (1) the existence of a contract between the parties; (2) the terms and conditions of the contract; (3) that they performed all the terms and conditions required under the contract; (4) that Kaydon breached the contract in some particular way; and (5) that they suffered damages as a result of the breach. *See, e.g., Molo Oil Co. v. River City Ford Truck Sales, Inc.,* 578 N.W.2d 222, 224 (Iowa 1998). "A party breaches a contract when, without legal excuse, it fails to perform any promise which forms a whole or a part of the contract." *Id.* (citing *Magnusson Agency v. Public Entity Nat'l Co.–Midwest,* 560 N.W.2d 20, 27 (Iowa 1997)).

### 3. Analysis

■ The court finds that, at the very least, the Mefferd Defendants have generated genuine issues of material fact on each of the elements of their breach-of-contract claim. First, the parties do. not dispute that they had a contract under which Kaydon was to pay the Mefferd Defendants commissions on certain sales, satisfying elements one and two. *See id.* Kaydon also does not dispute that the Mefferd Defendants performed the terms and conditions of that contract, at least as

to some sales. *Id.* (third element). Moreover, the Mefferd Defendants have certainly met their burden to generate a genuine issue of material fact, *see, e.g.,* FED. R. CIV. P. 56(e); *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548, as to the fourth element of their breach-of-contract claim, *see Molo Oil Co.,* 578 N.W.2d at 224, where they point to evidence that Kaydon's own expert acknowledges that about $1,100 in commissions *potentially* were not paid, even if there may be some explanation for the apparent non-payment, and that the expert cannot confirm that all commissions shown as paid were actually paid. Indeed, Kaydon may not have met its initial burden to show that there is no dispute that these commissions were not paid, *see, e.g., Hartnagel,* 953 F.2d at 395, where Kaydon has not put forward evidence that commissions were actually paid or that no commissions were actually due on each and every one of the doubtful invoices identified by its expert. The court finds that the Mefferd Defendants have also produced enough—although perhaps less convincing—evidence to generate genuine issues of material fact that Kaydon's commissions accounting for the Mefferd Defendants was sufficiently "irregular" to suggest manipulation. Consequently, there are also genuine issues of material fact on the final "damages" element of the Mefferd Defendants' breach-of-contract claim, *see Molo Oil Co.,* 578 N.W.2d at 224, where commissions may not have been paid.

Therefore, Kaydon is not entitled to summary judgment on the Mefferd Defendants' counterclaim for unpaid commissions. The evidence may be weak, and the potential damages may be trifling, but Kaydon certainly has not shown that no reasonable trier of fact could return a verdict for the Mefferd Defendants on their counterclaim. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

### III. CONCLUSION

The court summarized above the reasons for "clarifying" and "reconsidering" that part of its February 11, 2004, ruling on the parties' cross-motions for summary judgment on Kaydon's claim for indemnification for defense costs. Suffice it to say here that, upon reconsideration, Kaydon is *not* required to prove its liability to the Irgens plaintiffs to recover indemnification from the Mefferd Defendants for defense costs in defending the Irgens plaintiffs' claims, even though Kaydon settled its claim with the Irgens plaintiffs, and that there are no genuine issues of material fact precluding summary judgment in Kaydon's favor on its claim for indemnification for defense costs. On the other hand, on Kaydon's new motion for summary judgment, the court concludes that there are genuine issues of material fact precluding summary judgment in Kaydon's favor on the Mefferd Defendants' counterclaim for unpaid commissions.

THEREFORE,

1. Kaydon's March 3, 2004, Motion For Clarification Of Summary Judgment Ruling (docket no. 28) is **granted,** and upon clarification and reconsideration, Kaydon's January 4, 2004, cross-motion for summary judgment on its indemnity claim (docket no. 14) is **granted** as to Kaydon's claim for indemnification for defense costs in the Irgens litigation.

2. Kaydon's March 14, 2004, Motion For Summary Judgment On Defendants' Counterclaim (docket no. 37) is **denied**.

This matter will proceed to trial on unresolved issues on August 9, 2004, unless subsequently rescheduled by separate order.

**IT IS SO ORDERED.**